*271 OPINION OF THE COURT
Bellacosa, J.
Defendant was convicted of one count of criminal possession of a forged instrument in the second degree stemming from a multicount, multiparty, jury trial prosecution for commercial hazardous waste disposal crimes. The judgment was affirmed by the Appellate Division and a Judge of this Court granted leave to appeal. Defendant raises three issues: insufficiency of the evidence; trial error in the ruling that would have allowed the prosecution to impeach defendant, if he took the stand, with prior convictions for environmental crimes committed by himself and his corporation, Mattiace Petrochemical Co. (MPC); and a missing witness instruction error. We affirm the order of the Appellate Division.
PROCEDURAL HISTORY
The defendant is the president and chief stockholder of MPC, a storage and disposal business dealing in and with hazardous wastes in Glen Cove, New York. There was a joint trial on two consolidated indictments charging defendant, his two brothers and MPC with 22 counts relating to hazardous wastes stored at the company’s bulk chemical terminal, also in Glen Cove. Defendant was charged with unlawful and unauthorized possession of hazardous wastes (ECL 71-2709 [2], [3]; 71-2707 [1], [2]; 27-0914 [1]; 71-2705 [2]), conspiracy, offering a false instrument for filing and criminal possession of a forged instrument (Penal Law § 105.05 [1]; §§ 175.35, 170.25). Defendant was acquitted of all but one charge: criminal possession of a forged instrument, for producing a falsified hazardous waste manifest which was issued by MPC on December 20, 1984 to a hazardous waste transporter (Industrial Solvent and Chemical Company [Industrial]) at the MPC *272 warehouse terminal. The manifest document was issued to accompany hazardous waste to Industrial’s disposal site in Pennsylvania. The charges against the defendant’s brothers were disposed of prior to trial. MPC was convicted on 10 counts, including a conviction for the same offense of which defendant was found guilty.
SUMMARY OF TRIAL EVIDENCE
It was undisputed that the manifest was forged and falsely indicated that the generator of the subject waste products was Ace Spray Finishing Company (Ace), a former MPC customer. On December 20, 1984, a driver for Industrial loaded into his truck approximately 80 drums of hazardous waste at MFC’s terminal for transport and "recovery” at Industrial’s Pennsylvania site. The loading took only 30 minutes. The driver then waited at the terminal for approximately 3-4 hours for MPC employees to produce the necessary manifests. One of defendant’s brothers provided the driver with three hazardous waste manifests identifying three different generating companies — Ace, Premier Metal Products and Arthur Matney Company. The manifest at issue falsely named Ace as the generator of 30 55-gallon drums of waste-chlorinated solvent. The purported signers of the three concededly forged manifests all testified that the signatures on the manifests were not theirs. Ace’s employees testified that Ace had not produced any of the named chemical for approximately 15 years and that all 14 drums of hazardous waste generated by Ace in 1983-1984 had been disposed of by August of 1984 by a New Jersey transporter, S & W Corp., which disposal had been confirmed in writing. It was undisputed that at no time in 1984 did MPC pick up or arrange for transport of any hazardous waste from Ace.
Ace’s president, Sam Fox, telephoned defendant and arranged a meeting which was held on January 25, 1985 at Ace and attended by Fox, Montalvo (an Ace employee), defendant, and New York State Department of Environmental Conservation Investigator Mattera, who posed as an Ace employee and taped the full conversation. The transcript read into evidence discloses that during this meeting, defendant acknowledged that the signature on the Ace manifest was falsified; that the manifest was "erroneously written up”; that he was "aware” that MPC had not picked up any waste from Ace in 1984; and that the manifest had been issued at MFC’s terminal. The *273 Appellate Division noted Montalvo’s testimony that defendant spoke in an "agitated manner,” insisting that the problem would be "corrected” if they were to "reclassify” Ace as the generator of paint thinner transported by Industrial rather than of chlorine solvent, and urged solving the problem by issuing a "corrected” manifest. Defendant insisted on making these changes to the manifest despite his being told that Ace had written records that its 14 drums of paint thinner waste generated in 1983 had been disposed of by another company. Defendant presented Ace with a copy of a letter to Industrial dated that day and admitted into evidence purporting to reclassify and rectify the forged manifest in this manner. Defendant accused Industrial’s driver of filling out the manifest after obtaining Ace’s name and information from MFC’s corporate records. However, the manifests were completed at the corporate offices, not at the terminal.
ANALYSIS OF SUFFICIENCY ISSUE
The Appellate Division correctly determined that the jury could properly infer defendant’s guilty knowledge and possession of the forged Ace manifest from the circumstantial evidence (156 AD2d 390, 392; People v Bleakley, 69 NY2d 490, 495; Cohen v Hallmark Cards, 45 NY2d 493, 499; Penal Law § 170.25). The standard for review of legal sufficiency of evidence in a criminal case is whether " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt’ ” (People v Contes, 60 NY2d 620, 621, quoting Jackson v Virginia, 443 US 307, 319 [emphasis in original]). The test is met here. The facts, from which the inference of defendant’s guilt of the particular offense is drawn, are not consistent with innocence and exclude to a moral certainty every other reasonable hypothesis save guilt (People v Marin, 65 NY2d 741, 742; People v Sanchez, 61 NY2d 1022,1024).
The key evidentiary elements in this circumstantial web are:
• MFC had recently lost its interim permit to store hazardous wastes, of which it had a substantial accumulation;
• Defendant was the principal owner and operator of MFC and had the most to lose and the greatest motive and opportunity to place the forged manifest into the stream of transportation;
• The forged manifest permitted the disposal of a substantial quantity of hazardous waste by falsely identifying its point of *274 generation to probing State and Federal hazardous waste regulators;
• Defendant admitted at the meeting at Ace that MFC had "a problem with regard to customer service on accumulated waste material”;
• The concededly forged manifest had been filled out at defendant’s corporate offices out of which he exclusively worked and where all the customer records were stored;
• The manifest was filled out while Industrial’s driver waited for 3-4 hours at the terminal;
e Defendant indicated willingness to falsify a "corrected” manifest to appease Ace by incorrectly reclassifying the wastes transported; and
• Defendant falsely accused another.
In addition to this compelling evidence, which is sufficient to satisfy even the circumstantial evidence test review, defendant demonstrated a consciousness of guilt in his attempts to falsify yet another Ace manifest by incorrectly reclassifying the quantity and type of waste transported despite the fact that Ace had not generated this waste (see, People v Marin, 65 NY2d, supra, at 746; People v Benzinger, 36 NY2d 29, 33-34). Thus, the total evidence in this case sufficiently proved defendant’s motive, his opportunity to forge and access to the Ace manifest, his consciousness of guilt, and his knowing possession of the forged manifest with intent to defraud or deceive environmental protection authorities. Viewing this evidence, as an appellate court must at this stage of the proceedings, in the light most favorable to the prosecution, we conclude that the jury reasonably determined and the Appellate Division correctly affirmed on its dual review of weight and sufficiency that the prosecution presented sufficient evidence to prove defendant’s criminal possession of a forged instrument beyond a reasonable doubt.
THE SANDOVAL ISSUE
We have evolved a workable, staple proposition of law and review that the exclusion or inclusion of prior convictions for potential impeachment purposes is "largely, if not completely” a discretionary determination for the trial courts and fact-reviewing intermediate appellate courts, and that generally no further review by this Court is warranted (People v Shields, 46 NY2d 764, 765; see, People v Williams, 56 NY2d 236, 239; People v Brown, 48 NY2d 921, 923).
We cannot say as a matter of law that the trial court *275 abused its Sandoval discretion by ruling that the prosecution could impeach defendant, if he took the stand, with prior convictions for environmental crimes committed by himself and his corporation with whom he was jointly tried (People v Sandoval, 34 NY2d 371). The trial court held a lengthy hearing at which it considered many relevant factors and balanced the prejudice to defendant against his willingness to advance his own self-interest (see, id.). The court determined that two of defendant’s convictions for polluting could be used for impeachment if he took the stand and two of MFC’s illegal storage, transport and possession of hazardous wastes convictions could be used to impeach defendant. The trial court excluded defendant’s 1981 Federal conviction for making a false declaration on a Federal tax return and his 1987 conviction of criminal contempt, as well as MFC’s 1982 conviction for polluting waters.
Defendant contends that the Sandoval ruling was an abuse of discretion because the convictions which the court would have allowed for impeachment (he chose ultimately not to take the stand) were too similar to the crimes for which he was being tried and would have permitted the jury to infer his guilt from propensity based on the priors. He claims particular error in that the trial court would have allowed two prior MFC convictions for impeachment of defendant. One was identical to a charge for which defendant was on trial (unlawful possession of a hazardous waste) but of which he was found not guilty. The essential gripe in this respect is that MFC’s prior convictions "would likely cause the jury to believe that [defendant] and the Corporation were the same and that [defendant] was responsible for all corporate acts” which would have "fatally crippled” his defense that "he was not aware of certain acts of the Corporation and thus [was] not responsible for them.”
The Appellate Division correctly concluded that the Trial Judge did not abuse his discretion in the context of this case by ruling that defendant could be cross-examined with respect to prior convictions for environmental crimes similar to the environmental ones for which defendant and MFC were on trial. We have eschewed per se rules in this Sandoval field and no reason is evident here — whether we would agree in the first instance with the trial court’s inclusions or exclusions ourselves — to embark on a path of establishing automatic categories, e.g., as to the similar nature of prior convictions or *276 the particular party relationships (see, People v Pavao, 59 NY2d 282, 292).
Thus, ”[i]n the circumstances of this case, where the defendant was the owner, chief stockholder and president of a small family business, which had been indicted as his codefendant in the commission of identical crimes, it was not error to admit [if defendant had taken the stand] certain convictions of the corporation to impeach the credibility of the defendant” (156 AD2d, at 393). The potential use of MFC’s prior convictions to impeach the credibility of this defendant, who was jointly tried, is not erroneous as a matter of law. Evidence of MFC’s convictions could have been probative of defendant’s credibility, had he testified, as an officer and owner of the corporation. It would not have been admitted to prove or bear on defendant’s criminal propensity or sole responsibility for the corporate crimes but to affect his credibility and defensive explanations or deflections of responsibility. On the facts of this case, the ruling did not rise to an abuse of discretion as a matter of law (see, People v Brown, 48 NY2d 921, 923, supra; People v Shields, 46 NY2d 764, supra).
We have examined appellant’s missing witness instruction issue and conclude it is without merit under settled law (People v Dianda, 70 NY2d 894, 896; People v Gonzalez, 68 NY2d 424, 428).
Accordingly, the order of the Appellate Division should be affirmed.