OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal tests the scope of impeachment based on defendant’s prior convictions, in particular whether cross-examination of defendant had to be limited to the mere existence of prior convictions, or whether it properly also included the nature of the crimes.
 

 After two days of verbal and physical abuse by her spouse, on October 10, 1998 complainant was placed by a domestic violence caseworker at a motel in Washington County. There, defendant allegedly entered her room, raped her and took money. A physical examination the next day revealed bruises and other evidence of trauma consistent with nonconsensual intercourse. As a consequence, defendant was charged with rape and coercion in the first degree, burglary and unlawful imprisonment in the second degree, and assault in the third degree. Defendant concedes he had sexual intercourse with complainant that night, but claims it was consensual.
 

 At a pretrial hearing pursuant to
 
 People v Sandoval
 
 (34 NY2d 371 [1974]), the People sought permission to cross-examine defendant, if he took the stand, regarding six prior
 
 *206
 
 convictions. Defense counsel argued that introduction of the prior crimes — including several similar crimes — would unduly prejudice defendant’s right to a fair trial, especially because the case “comes down to word versus word” in this one-on-one encounter. Acknowledging the similarity of the prior crimes, County Court ruled that the People could cross-examine defendant as to the existence and nature — but not the underlying facts — of four past convictions: a 1997 conviction for assault in the third degree, a 1994 conviction for sexual abuse in the first degree, and two 1988 convictions in Illinois, one for aggravated criminal sexual assault and one for aggravated kidnapping. The court prohibited impeachment based on a 1994 conviction for attempted assault in the second degree, and a 1978 Illinois trespass conviction as too remote.
 

 Defendant chose not to testify. The jury found him guilty of all charges except assault in the third degree, and the court sentenced him as a persistent violent felony offender to an indeterminate term of imprisonment of 25 years to life.
 

 The Appellate Division reversed County Court’s
 
 Sandoval
 
 ruling and remitted the matter for a new trial, holding that County Court erred in permitting cross-examination regarding the nature of defendant’s prior similar crimes. The Court concluded:
 

 “While we recognize that there are cases standing for the proposition that the mere similarity of a prior conviction to the charge for which a defendant stands trial does not automatically preclude inquiry, the prevailing case law provides that striking a balance between the probative value that a similar conviction will have upon the credibility of a defendant and the risk of unfair prejudice requires that the trial court permit cross-examination as to the existence of
 
 a
 
 prior conviction, but not the nature of the conviction or the underlying circumstances thereof’ (278 AD2d 592, 593 [emphasis in original]).
 

 The Appellate Division found County Court’s
 
 Sandoval
 
 ruling an abuse of discretion, noting that defendant was the only witness who could have disputed the testimony of complainant on the question of forcible compulsion.
 

 We now reverse. Neither the similarity of defendant’s prior convictions nor the alleged singularity of his testimony (which the People dispute) required that impeachment be limited to the existence of defendant’s prior convictions.
 

 
 *207
 
 Historically, a person convicted of a crime was disqualified from serving as a witness based on the premise that the person’s testimony would be wholly untrustworthy
 
 (see
 
 Fisch, New York Evidence § 262, at 163 [2d ed]). Nineteenth century legislation removed that common-law disqualification, and also removed remaining prohibitions against accuseds serving as witnesses in their own behalf
 
 (see
 
 Fisch, New York Evidence § 459, at 299 [2d ed];
 
 People v Rosenheimer,
 
 209 NY 115, 123 [1913]). Rather than prohibit such testimony outright, courts permitted impeachment based on prior convictions
 
 (see e.g. People v Cardillo,
 
 207 NY 70, 72 [1912]).
 

 As the law has developed, a criminal defendant who chooses to testify, like any other civil or criminal witness, may be cross-examined regarding prior crimes and bad acts that bear on credibility, veracity or honesty
 
 (see People v Sandoval,
 
 34 NY2d at 376;
 
 People v
 
 Schwartzman, 24 NY2d 241, 244 [1969]). As
 
 Sandoval
 
 explains,
 

 “To the extent * * * that the prior commission of a particular crime of calculated violence or of specified vicious or immoral acts significantly revealed a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society, proof thereof may be relevant to suggest Ms readiness to do so again on the witness stand. A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity” (34 NY2d at 377).
 

 While the credibility of witnesses generally may be challenged by their prior crimes or bad acts, permitting impeachment of a criminal defendant in this fashion risks both that the trier of fact will view such evidence as proof of propensity to commit the crime charged and that the defendant may be unduly deterred from giving testimony. To minimize such risks, a criminal defendant may obtain an advance ruling as to whether, and the extent to which, the People can introduce such proof
 
 (see
 
 Prince, Richardson on Evidence § 6-410, at 399 [Farrell 11th ed]).
 

 The determination rests largely within the reviewable discretion of the trial court, to be exercised in light of the facts and circumstances of the particular case before it
 
 (see Sandoval,
 
 34
 
 *208
 
 NY2d at 375;
 
 People v Shields,
 
 46 NY2d 764, 765 [1978]). A trial court may exclude such evidence entirely. It may, alternatively, limit inquiry to the mere fact that there has been a prior conviction; it may limit inquiry to the existence and nature of the prior conviction; or it may permit examination into the facts and circumstances underlying the prior conviction.
 

 Repeatedly, we have eschewed fixed rules to determine where to draw the line. We have, for example, declined to prohibit impeachment simply because of the potentially inflammatory impact of the prior crime or the victim involved, even in the sensitive area of sex offenses
 
 (People v Bennette,
 
 56 NY2d 142, 147 [1982]). And we have declined to prohibit cross-examination solely because of the similarity of prior acts to the crimes charged
 
 (see e.g. People v Mattiace,
 
 77 NY2d 269, 275-276 [1990];
 
 People v Rahman,
 
 46 NY2d 882, 883 [1979];
 
 People v Pavao,
 
 59 NY2d 282, 292 [1983]). Measured against such precedents, which are plentiful, plainly the Appellate Division erred in requiring that cross-examination be limited to the mere existence of defendant’s prior convictions where prior crimes are similar to the pending charges.
 

 Given the absence of any absolute prohibition on inquiry into the nature of prior similar crimes, we conclude that the trial court did not abuse its discretion, as alleged, in its
 
 Sandoval
 
 ruling, but rather weighed appropriate concerns and limited both the number of convictions and the scope of permissible cross-examination. Similarly, the possible unavailability of other witnesses does not mandate a specific outcome, as a hearing court may conclude that this factor increases the importance of defendant’s credibility as well as the importance of defendant’s presence on the witness stand
 
 (see e.g. People v Kelly,
 
 270 AD2d 511, 513 [2000]).
 

 Accordingly, the order of the Appellate Division should be reversed and the case remitted to that Court for consideration of the facts and issues raised but not determined on the appeal to that Court.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.