■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE R. CALDERON, Appellant. [47 NYS3d 43]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Cyrulnik, J.), rendered June 27, 2013, convicting him of rape in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the facts and in the exercise of discretion, and a new trial is ordered.

The defendant contends that the evidence was legally insufficient to support his conviction and that the verdict was against the weight of the evidence. Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 420 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

The defendant contends that the prosecutor's redirect examination of a police officer who took the complainant's statement impermissibly bolstered the complainant's testimony by introducing her prior consistent statement made at the time of the defendant's arrest. This contention is unpreserved for appellate review. In any event, the Supreme Court properly allowed the prosecutor to elicit the substance of the complainant's statement on redirect examination for the purpose of explaining and clarifying the police officer's prior testimony that was introduced on cross-examination (*see People v Ochoa*, 14 NY3d 180, 186-187 [2010]; *People v Torre*, 42 NY2d 1036, 1037 [1977]; *People v Holden*, 82 AD3d 792, 793 [2011]; *People v Melendez*, 51 AD3d 1040 [2008]; *People v Williams*, 43 AD3d 414 [2007]; *People v Johnson*, 296 AD2d 422 [2002]).

A *Sandoval* hearing (*see People v Sandoval*, 34 NY2d 371 [1974]) was held prior to trial, after which the Supreme Court ruled, in part, that, should the defendant testify on his own behalf, the People would be permitted to inquire about his conviction for robbery in the first degree on December 8, 1986. Specifically, the court ruled that the People could cross-examine the defendant about the fact of the conviction and some of the underlying facts of the robbery, including that the defendant placed a knife to the complainant's neck, but not the fact that the defendant threatened to kill the complainant. The court

reasoned that, while it was alleged in the present case that the defendant had placed a knife to the complainant's neck during the commission of the rape, the similarity of the alleged conduct should not shield the defendant from cross-examination. We agree with the defendant that the court improvidently exercised its discretion in making its *Sandoval* ruling (*see People v Sandoval*, 34 NY2d 371 [1974]; *People v Wright*, 121 AD3d 924, 928 [2014]; *People v Brothers*, 95 AD3d 1227, 1228-1229 [2012]; *People v Finger*, 166 AD2d 714, 716 [1990]; *People v Moore*, 156 AD2d 394, 394-395 [1989]).

In *Sandoval*, the Court of Appeals recognized that "cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility" (*People v Sandoval*, 34 NY2d at 377). The Court reasoned that "a balance must here be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf" (*id.* at 375). The Court further reasoned that when considering whether the impeachment evidence should be admitted, and whether the defendant will be deprived of a fair trial, courts should consider whether "the testimony to be elicited in cross-examination [will] have a disproportionate and improper impact on the triers of fact" and whether "the apprehension of its introduction [would] undesirably deter the defendant from taking the stand and thereby deny the jury or court significant material evidence" (*id.* at 376).

"In weighing prejudice to the defendant's right to a fair trial, an important consideration may be the effect on the validity of the fact-finding process if the defendant does not testify out of fear of the impact of the impeachment testimony for reasons other than its direct effect on his credibility—as where the defendant would be the only available source of material testimony in support of his defense" (*id.* at 378). The inquiry, as the Court provided, "must always depend on the individual facts and circumstances of each case" (*id.* at 375).

A brief recitation of the facts and circumstances of this case is required for our analysis of the Supreme Court's *Sandoval*

ruling. The defendant was accused of forcibly raping the complainant at knifepoint. This incident was alleged to have occurred sometime between November 2006 and January 2007, in the defendant's apartment. At that time, the complainant was suffering from drug addiction and smoked crack cocaine every day. Although she had been diagnosed with bipolar schizophrenia disorder, the complainant was not taking any medication for her condition at that time because she was homeless and living on the streets. On a day during this time frame, the complainant encountered the defendant at a location in Brooklyn and he invited her to his apartment so they could get high. The complainant smoked crack while in the defendant's apartment, after which the defendant allegedly raped her at knifepoint. The complainant remained in the defendant's apartment until the following morning. The complainant testified that, upon leaving the apartment, she saw two police officers and told them what had happened, but that the officers did not take her seriously. Until 2011, the complainant made no other attempts to report the alleged incident. On December 28, 2011, the complainant took her grandmother to Woodhull Hospital for an appointment. The complainant observed the defendant at the hospital, and thereafter she reported the alleged rape to the police. The defendant was subsequently arrested, and this prosecution ensued. The defendant did not testify at trial.

In determining the People's *Sandoval* application, the Supreme Court ruled, inter alia, that if the defendant elected to testify, he could be cross-examined on the fact of his conviction for robbery in the first degree on December 8, 1986, as well as some of the underlying facts, including that he had placed a knife to the robbery complainant's neck during the commission of that crime.

While we recognize that, under *Sandoval* and its progeny, the mere similarity of crimes or conduct to the charge for which a defendant stands trial does not automatically preclude inquiry, here, under the particular facts and circumstances of this case, a proper balancing of the probative value of the defendant's prior conduct of placing a knife to the robbery complainant's neck, in connection with the issue of credibility, against the risk of unfair prejudice to the defendant, should have resulted in a ruling precluding the People's proposed line of questioning (*see People v Anderson*, 130 AD3d 1055, 1056 [2015], *lv granted* 26 NY3d 1142 [2016]; *cf. People v Grant*, 7 NY3d 421, 425 [2006]). Moreover, the error was not harmless (*see People v Grant*, 7 NY3d at 423; *People v Williams*, 56 NY2d

236, 240-241 [1982]; *People v Crimmins*, 36 NY2d 230, 241-242 [1975]). The proof of the defendant's guilt was far from overwhelming, and the defendant was the only available source of material testimony in support of his defense (*see People v Sandoval*, 34 NY2d at 378). Inasmuch as the pretrial ruling affected the defendant's decision whether to testify and denied the jury potentially significant material evidence, the Supreme Court's *Sandoval* ruling cannot be considered harmless (*see People v Grant*, 7 NY3d at 424; *People v Williams*, 56 NY2d at 241).

The two cases most heavily relied upon by our dissenting colleague are, respectfully, distinguishable on the facts.

In *People v Hayes* (278 AD2d 592 [2000], *revd* 97 NY2d 203 [2002]), the defendant was charged with rape in the first degree, coercion in the first degree, burglary in the second degree, unlawful imprisonment in the second degree, and assault in the third degree. The hearing court ruled that, if the defendant were to take the stand, he could be cross-examined on the existence and nature of various prior convictions, some of which included sexual offenses. However, the court precluded the People from eliciting the underlying facts of those convictions (*see id.* at 593-594). The Appellate Division, Third Department, reversed the judgment of conviction, on the law, and held that the court erred in permitting cross-examination regarding the nature of the defendant's prior similar crimes (*see id.*). The Court of Appeals reversed the Appellant Division, and held that the Appellate Division erred in requiring that cross-examination should have been limited to the mere existence, rather than the nature, of the defendant's prior convictions (*see People v Hayes*, 97 NY2d at 208). The Court noted that the similarity of the defendant's prior convictions did not require that impeachment should be limited only to the existence of those convictions (*see id.* at 208).

Here, however, the Supreme Court permitted cross-examination on the existence and nature of the defendant's conviction for robbery in the first degree, and also certain underlying facts, including that the defendant placed a knife to the complainant's neck during the commission of the robbery. In that this particular underlying fact was identical to the complainant's allegation in this case as to what occurred during the rape, any probative value it may have had on the defendant's credibility was clearly outweighed by its potential prejudicial effect on the jury, based upon the particular facts and circumstances of this case.

We recognize that, in certain instances, the prior commission

of a particular crime of calculated violence, or of specified vicious or immoral acts by a defendant, can reveal a willingness on the defendant's part to place the advancement of his or her self-interests ahead of the interests of society, and therefore, that proof thereof may be relevant to the defendant's credibility (*see People v Sandoval*, 34 NY2d at 377). Here, however, the likelihood that evidence that the defendant placed a knife to a complainant's neck during the commission of a prior crime would have influenced the jury to believe that the defendant had a propensity to commit the crime in the case at bar was great, and far outweighed the likelihood that the jury would have considered the evidence only as it bore on the defendant's credibility.

In *People v Levy* (290 AD2d 565 [2002]), our determination that the Supreme Court providently exercised its discretion in ruling that the prosecution could inquire into the defendant's prior knifepoint assault on a woman was based upon the facts and circumstances of that case. Since each case requires a balancing of its own particular facts, our determination in *Levy* is not dispositive. Here, as previously indicated, the proof of the defendant's guilt was far from overwhelming, and the defendant was the only available source of material testimony in support of his defense. The Supreme Court's *Sandoval* ruling in this case likely deterred the defendant from taking the stand, and thereby denied the jury potentially significant material evidence (*see People v Sandoval*, 34 NY2d at 376; *People v Moore*, 156 AD2d at 395).

To suggest, as our dissenting colleague does, that the jury was not deprived of significant, material evidence merely because the defendant's statement to the police was introduced into evidence during the People's case-in-chief, completely ignores a cornerstone of the judicial process, that being the jury's ability to see and hear a witness testify, in this case the defendant, in order to assess his or her credibility and weigh his or her testimony. The suggestion also incorrectly presumes that the defendant's testimony would have mirrored his statement to the police, and would not have contradicted the contents of the statement, or the testimony related thereto by the People's witness.

Contrary to the view expressed by our dissenting colleague, our determination in this case that the Supreme Court improvidently exercised its discretion in making its *Sandoval* ruling was based upon our examination and consideration of all the individual facts and circumstances of the case (*see People v Sandoval*, 34 NY2d at 375).

Accordingly, the judgment must be reversed, and a new trial ordered. Austin, Miller and LaSalle, JJ., concur.

Chambers, J.P., dissents, and votes to affirm the judgment, with the following memorandum: Prior to the commencement of trial, the People made an application pursuant to *People v Sandoval* (34 NY2d 371 [1974]), requesting that they be permitted to inquire about the defendant's prior convictions for murder in the second degree, robbery in the first degree, disorderly conduct, unauthorized use of a vehicle, criminal possession of a controlled substance in the seventh degree, attempted petit larceny, and two separate convictions for petit larceny.

Insofar as relevant to this appeal, defense counsel argued that since a knife allegedly was used in this case, evidence of the defendant's prior convictions for murder in the second degree and robbery in the first degree, both of which also involved the use of a knife, would be overly prejudicial. The Supreme Court ruled, inter alia, that if the defendant elected to testify, he could be cross-examined on the fact that he had been convicted of petit larceny and attempted petit larceny. The People could also cross-examine him on the underlying facts of his conviction for robbery in the first degree, including the defendant's use of a knife but excluding the fact that the defendant had threatened to kill the complainant. The court further ruled that the People could not cross-examine the defendant on the conviction for murder in the second degree in any respect, since the nature of that conviction would have a disproportionate effect on the jury.

The majority holds that the Supreme Court's *Sandoval* ruling was an improvident exercise of discretion insofar as it allowed the People to cross-examine the defendant with respect to his use of a knife in connection with his prior conviction for robbery in the first degree. Since I believe the court's *Sandoval* ruling was a provident exercise of discretion, I respectfully dissent.

"[A] criminal defendant who chooses to testify, like any other civil or criminal witness, may be cross-examined regarding prior crimes and bad acts that bear on credibility, veracity or honesty" (*People v Hayes*, 97 NY2d 203, 207 [2002]; *see People v Sandoval*, 34 NY2d at 376). In making a *Sandoval* ruling, the hearing court must strike a proper balance between the probative value of the evidence of prior crimes on the issue of credibility and "the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction

may have in discouraging him from taking the stand on his own behalf" (*People v Sandoval*, 34 NY2d at 375).

The determination rests largely within the sound discretion of the hearing court (*see People v Hayes*, 97 NY2d at 207; *People v Walker*, 83 NY2d 455, 458-459 [1994]; *People v Sandoval*, 34 NY2d at 374). "A court may exclude the evidence entirely; 'limit [the prosecution's] inquiry to the mere fact that there has been a prior conviction; it may limit inquiry to the existence and nature of the prior conviction; or it may permit examination into the facts and circumstances underlying the prior conviction' " (*People v Smith*, 18 NY3d 588, 593 [2012], quoting *People v Hayes*, 97 NY2d at 208).

The Court of Appeals has repeatedly "eschewed fixed rules to determine where to draw the line" and has "declined to prohibit cross-examination solely because of the similarity of prior acts to the crimes charged" (*People v Hayes*, 97 NY2d at 208; *see People v Smith*, 18 NY3d at 594).

In *Hayes*, as here, the defendant was accused of rape in the first degree, his sole defense was lack of forcible compulsion, and the only witness who could have disputed the complainant's testimony on lack of consent was the defendant himself (*see People v Hayes*, 278 AD2d 592, 593-594 [2000], *revd* 97 NY2d 203 [2002]). The hearing court in *Hayes* had ruled that, if the defendant were to take the stand, he could be cross-examined on his prior convictions for assault in the third degree, sexual abuse in the first degree, aggravated criminal sexual assault, and aggravated kidnapping. While the underlying facts of those convictions could not be elicited, the nature of the convictions would be revealed (*see id.* at 593). In upholding the hearing court's *Sandoval* ruling, the Court of Appeals noted that "[n]either the similarity of defendant's prior convictions nor the alleged singularity of his testimony . . . required that impeachment be limited to the existence of defendant's prior convictions" (*People v Hayes*, 97 NY2d at 206). The Court further observed that "the possible unavailability of other witnesses does not mandate a specific outcome, as a hearing court may conclude that this factor increases the importance of defendant's credibility as well as the importance of defendant's presence on the witness stand" (*id.* at 208; *see People v Lopez*, 37 AD3d 496, 497 [2007]).

The majority's attempt to distinguish *Hayes* is unconvincing. Indeed, in the context of a rape trial in which the only defense is consent and the only witnesses are the defendant and the complainant, it is difficult to imagine any more prejudicial revelation than the fact that the defendant previously had

been convicted of sexual abuse, aggravated criminal sexual assault, and aggravated kidnapping. Where, as in *Hayes*, the prior convictions are nearly identical to the offenses for which the defendant is on trial, disclosing the nature of the prior convictions is undoubtedly enough to cause prejudice, regardless of whether the jury is also apprised of the underlying facts. In fact, the potential disclosure of a single prior use of a knife in this case seems far less prejudicial than the proposed revelation, in *Hayes*, of the accused's multiple prior sexual offense convictions.

I am cognizant of the fact that the majority's reversal in this case is not made upon the law, but solely "on the facts and in the exercise of discretion." However, holdings by this Court that a *Sandoval* ruling constituted an "improvident exercise of discretion" are exceedingly rare (*see People v Anderson*, 130 AD3d 1055 [2015], *lv granted* 26 NY3d 1142 [2016]; *People v Brothers*, 95 AD3d 1227 [2012]; *People v Finger*, 166 AD2d 714 [1990]; *People v Williams*, 157 AD2d 760 [1990]; *People v Moore*, 156 AD2d 394 [1989]), and I do not see what distinguishes this particular case from myriad other cases in which this Court, using its unique power to review the exercise of discretion by the trial court, upheld *Sandoval* rulings involving similar prior crimes or similar facts as provident exercises of discretion (*see e.g. People v Rosado*, 115 AD3d 884 [2014] [prior convictions for petit larceny, trespass, and attempted petit larceny, in prosecution for burglary]; *People v Marcus*, 112 AD3d 652, 653 [2013] [prior attempted robbery conviction, in prosecution for robbery and burglary]; *People v Betancourt*, 106 AD3d 831, 832 [2013] [prior uncharged larcenies, in prosecution for robbery and murder]; *People v Lewis*, 101 AD3d 1154 [2012] [prior grand larceny conviction, in prosecution for robbery]; *People v Hicks*, 84 AD3d 1402 [2011] [prior assault conviction, in prosecution for assault]; *People v Harris*, 74 AD3d 984 [2010] [prior robbery conviction, in prosecution for robbery]; *People v Avila*, 69 AD3d 642, 642 [2010] [prior assault involving a weapon, in prosecution for criminal possession of a weapon]; *People v Hayes*, 44 AD3d 683, 683 [2007] [prior attempted robbery and robbery convictions, in prosecution for robbery]; *People v Fotiou*, 39 AD3d 877 [2007] [prior convictions for falsely appearing as an attorney-at-law, in prosecution for grand larceny, fraud, and falsely appearing as an attorney-at-law]; *People v Lopez*, 37 AD3d 496 [2007] [prior felony criminal possession of a weapon conviction, in prosecution for second degree robbery (displaying what appears to be a weapon)]; *People v Lewis*, 31 AD3d 788, 789 [2006] [prior petit larceny and attempted robbery convictions, in prosecution for robbery]; *People v Dahlbender*, 23

AD3d 493 [2005] [prior attempted robbery and petit larceny convictions, in prosecution for felony murder (robbery)]; *People v Whitney*, 287 AD2d 585, 585 [2001] [prior attempted armed robbery conviction, in prosecution for armed robbery and burglary]; *People v Hilaire*, 211 AD2d 642 [1995] [prior uncharged robbery committed the same night and in the same general location as the subject robberies]).

In a rape case where, as here, the prosecution was expressly permitted to inquire about a prior knifepoint assault, this Court upheld the trial court's *Sandoval* ruling as a provident exercise of discretion, reasoning that "[t]he defendant's past acts demonstrated his willingness to place his own interests ahead of those of society, and were relevant on the issue of his credibility" (*People v Levy*, 290 AD2d 565, 565 [2002]). To summarily dismiss *Levy*, as does the majority, on the ground that "each case requires a balancing of its own particular facts" offers precious little by way of guidance to future trial courts whose *Sandoval* rulings will be scrutinized under this Court's discretionary review power.

Indeed, from the majority's recitation of the facts, the only explanation for concluding that the Supreme Court's *Sandoval* ruling was an improvident exercise of discretion is that the prosecution's case against this defendant was weak because of the complainant's history of drug abuse and mental illness, as well as the lapse of time between the crime and the defendant's arrest. Such reasoning, however, improperly conflates the *Sandoval* analysis with the question of harmless error, and misconstrues the prejudice prong of the *Sandoval* inquiry.

In weighing the prejudice to the defendant's right to a fair trial, the touchstone is not the perceived strength or weakness of the prosecution's case; rather, it is whether a decision by the defendant not to testify will deprive the factfinder of significant, material evidence (*see People v Grant*, 7 NY3d 421, 424 [2006]; *People v Sandoval*, 34 NY2d at 378). Here, the majority overlooks the fact that although the defendant elected not to testify, his statement to the police, in which he explained that he had met the complainant "eight to ten times" at his house, and that he would usually have sexual relations with her and give her "between 15 and 20 dollars," was admitted into evidence as part of the People's case-in-chief. While the defendant's statement is not a substitute for his live testimony, it did present the jury with a version of events that was fundamentally at odds with the complainant's trial testimony. At minimum, the complainant's testimony did not go unchallenged, even though the defendant elected not to testify. Thus,

under the facts of this case, it is far from clear that the defendant's decision not to testify deprived the factfinder of any significant, material evidence.

In weighing the probative value of the impeachment evidence against the likely prejudice to the defendant, the Supreme Court in this case took care to exclude any evidence of the defendant's prior murder conviction. Even with respect to the prior robbery conviction, the court excluded any evidence that the defendant threatened the complainant's life. Taking into account the defendant's statement, as well as the complainant's own history of criminality, drug use, and prostitution—all of which were extensively explored during her testimony—the court providently exercised its discretion in concluding that the defendant should not be shielded from impeachment merely because he chose to use a knife in committing prior crimes. I respectfully dissent.