[52 NYS3d 48]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BLOND-
INE DESTIN, Appellant.

First Department, April 11, 2017

**APPEARANCES OF COUNSEL**

*Seymour W. James, Jr., The Legal Aid Society*, New York City (*Shane Tela* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Philip Morrow* and *Christopher P. Marinelli* of counsel), for respondent.

**OPINION OF THE COURT**

Acosta, J.

This appeal calls for us to revisit the assumption-of-identity element of the crime of identity theft in the context of a defendant's attempt to cash a counterfeit check payable to her, by submitting personal identification showing her name and by signing her name on the back of the check when asked to endorse it. As this Court has held, the assumption of another's identity "is a separate and essential element of the offense of identity theft which must be proven beyond a reasonable doubt" (*People v Barden*, 117 AD3d 216, 227 [1st Dept 2014], *revd on other grounds* 27 NY3d 550 [2016]). The People argue that, by presenting for payment a check that showed the apparent issuing bank's routing number and account number, i.e., the bank's

"personal identifying information" (*see* Penal Law § 190.80), the defendant implicitly assumed the identity of the bank (*see* *Barden*, 117 AD3d at 220). Assuming without deciding that in this context a bank is a "person" whose identity could be stolen (*see* Penal Law § 190.77), we nevertheless hold that the evidence in this case was legally insufficient to support the verdict of guilty of identity theft in the first degree.

At approximately 4:30 p.m. on March 30, 2012, defendant entered a TD Bank branch in Manhattan and attempted to cash a check, which was payable to "Blondine Destin" and appeared to have been issued by H&R Block Bank.[1] Because the value of the check was over $1,000 (it was $4,521), the bank teller could not cash the check and was required to verify whether defendant had a TD Bank account. The teller gave the check to a supervisor and asked defendant to wait.

The TD Bank supervisor noticed several discrepancies when he compared defendant's check to images of previously cashed H&R Block tax refund checks that were stored in the bank's computer system. For example, defendant's check was missing an H&R Block logo in the middle of the check and a telephone number that, ordinarily, would connect the caller to an automated system that would provide a four-digit confirmation after the caller entered the check number and amount.[2] The supervisor alerted his regional operations officer and sent an email to notify the remainder of the region that "fraudulent checks were being passed around." In the email, the supervisor

---

1. H&R Block Bank supports H&R Block tax offices for its tax customers who wish to receive their tax refunds by check. To process a customer's return, H&R Block opens a temporary bank account for the customer and closes it after issuing the refund check. Only an H&R tax customer could receive an H&R Block tax return check.

2. H&R Block's director of risk and compliance later testified that there were several apparent differences between defendant's check and a real H&R Block check. For example, there was an abnormally large gap between the check number and the "minor digits" on the top right of defendant's check; the text on defendant's check was not in the correct font; the amount was not written in the correct format on defendant's check; and the date on defendant's check was not written exclusively in numbers. In addition, defendant's check was missing the required statement that H&R Block Bank was a member of the FDIC, the "plus four" zip code digits for the payee's address, and the district and office code identifying the particular office that issued the check.

The director also discovered that defendant's name did not appear in H&R Block Bank's system, indicating that she was not a customer and that the check payable to her was fake.

included a scanned copy of defendant's check and a sample image of a legitimate check.

Defendant, apparently having grown tired of waiting, returned to the teller's station to find out what was happening. Somehow, she was able to recover the check and walk out of the branch. Within the next hour, defendant attempted to cash a check at two other TD Bank branches, but the tellers noticed that defendant's check resembled the fraudulent one in the email alert. At both locations, defendant left after being told that the bank could not cash the check.

Around 6:20 p.m. that same day, defendant entered a fourth TD Bank location and tried again to cash a tax refund check that was purportedly issued by H&R Block Bank. The bank teller, who had read the email alert regarding the earlier attempts to cash fraudulent checks, noticed that defendant's check "looked a little funny." The teller took defendant's check and identification to determine the check's authenticity. She then called the regional operations officer to alert him that defendant was trying to cash a counterfeit check, and asked a uniformed police officer who was working at the bank to call other officers and have defendant arrested. To stall defendant until the police arrived, the teller had her endorse the back of the check, suggesting that it could be cashed. When a police car pulled up in front of the bank, defendant "tried to rush out," leaving behind the check and her identification.

The bank's police officer stopped defendant in the vestibule. At about 6:50 p.m., two other police officers entered the bank. A bank employee gave the officers what appeared to be an H&R Block Bank tax refund check in the amount of $4,521, payable to Blondine Destin. The officers arrested defendant after one of them contacted an H&R Block representative and determined that the check was fraudulent. The check number was the only difference between the check that defendant presented at the first bank branch, which the supervisor scanned and emailed, and the one that was recovered during defendant's arrest at the fourth location.

After a jury trial, defendant was convicted of identity theft in the first degree, criminal possession of a forged instrument in the second degree, and four counts of attempted grand larceny in the third degree, and was sentenced as a second felony offender to concurrent prison terms of two to four years on each count. Defendant has served her sentence and now appeals, arguing that the evidence was legally insufficient to sup-

port her identity theft conviction and that the verdict on that count was against the weight of the evidence. In addition, she contends that the trial court's evidentiary rulings denied her a fair trial.

A person commits identity theft in the first degree "when he or she knowingly and with intent to defraud assumes the identity of another person by [inter alia] . . . using personal identifying information of that other person, and thereby . . . commits or attempts to commit a class D felony or higher level crime" (Penal Law § 190.80 [3]). The term "personal identifying information" includes a "financial services account number or code" and a "checking account number or code" (Penal Law § 190.77 [1]).

This Court has held that evidence is legally sufficient to support an identity theft conviction only if the People prove that the defendant (1) engaged in one of the enumerated methods by which one can assume the identity of another (e.g., using the victim's personal identifying information), and (2) consequently assumed the victim's identity (*People v Barden*, 117 AD3d 216 [1st Dept 2014], *revd on other grounds* 27 NY3d 550 [2016], *supra*; *see also People v Roberts*, 138 AD3d 461 [1st Dept 2016], *lv granted* 28 NY3d 1075 [2016]). In *Barden*, the defendant used his business associate's credit card to charge hotel expenses by falsely indicating that he had the cardholder's continued authorization to charge the card. This Court found that the statute was ambiguous, and interpreted it in accordance with the rule of lenity, determining that assumption of a victim's identity is a discrete element of the crime of identity theft (*id.* at 226-227). The Court noted that although a defendant's use of another person's credit card will ordinarily result in "an implicit assumption of identity, . . . [t]he implication falls away . . . when the person accepting the credit card knows that the card user is, in fact, someone other than the cardholder" (*id.* at 227-228). Because the hotel employees were aware that the credit card did not belong to the defendant, the *Barden* Court concluded that the defendant had not assumed the identity of the cardholder and, thus, could not be found guilty of identity theft (*id.* at 228).

The Fourth Department declined to follow *Barden* in *People v Yuson*, which upheld an identity theft conviction where the defendant deposited forged checks into his bank account (133 AD3d 1221 [4th Dept 2015], *lv denied* 27 NY3d 1157 [2016]). The *Yuson* Court concluded that "the statute is unambiguous

and defines the phrase 'assumes the identity of another person' by the phrase that immediately follows it, i.e., by, inter alia, using the personal identifying information of that other person" (133 AD3d at 1222). However, we explained in *Barden* that

> "the [identity theft] statute is facially ambiguous, because it is unclear whether the words that follow the phrase 'assumes the identity of another person' are intended to define that phrase—in which case, committing one of the described acts would constitute an assumption of identity—or whether they serve as various means by which assumption of identity *can*, but does not necessarily, take place. The statute's definitional section (Penal Law § 190.77) . . . clearly defines, inter alia, 'personal identifying information,' . . . [but] the phrase 'assumes the identity of another' does not appear in the list of definitions . . .

> "[T]he legislative intent remains nebulous. On one hand, the legislature may have intended to define [the phrase] in the wording of the statute itself, implying that a person necessarily assumes the identity of another simply by engaging in one of the listed methods. On the other hand, by excluding the phrase from the list of definitions [in Penal Law § 190.77], the legislature may have intended that the methods provided in the body of the statute are ways by which a person *can* assume another's identity, but that assumption of identity must be the result of the method used.

> "Because the statute is susceptible to these two reasonable interpretations and the legislative history is inconclusive, we decide this issue in accordance with the rule of lenity and sanction the interpretation more favorable to defendant" (117 AD3d at 226).

Thus, we are not persuaded by the *Yuson* Court's determination that the statute is unambiguous.

Indeed, if the legislature had intended that assumption of identity not be considered an element of the crime, it could have omitted the phrase "assumes the identity of another" entirely. For example, the statute could have been modified in the following way: A person commits identity theft in the first degree "when he or she knowingly and with intent to defraud

. . . present[s] himself or herself as [another] person, . . . act[s] as another person or . . . us[es] personal identifying information of [another] person, and thereby [inter alia] . . . attempts to commit a class D felony or higher level crime" (Penal Law § 190.80 [3]). There is no material difference between this modified version of the statute and the Fourth Department's reading of the current statute, both of which render the phrase "assumes the identity of another" meaningless. It is axiomatic, however, that "meaning and effect should be given to every word of a statute" (*Criscione v City of New York*, 97 NY2d 152, 157 [2001] [internal quotation marks omitted]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 231; *People v Dethloff*, 283 NY 309, 315 [1940] [reviewing court must proceed "upon the assumption that the Legislature did not deliberately place in the statute a phrase which was intended to serve no purpose"]). Therefore, we will continue to follow *Barden*'s instruction that assumption of identity is a discrete element of the crime of identity theft and that the People must prove that element beyond a reasonable doubt.

■ Applying those principles to the facts of this case, we find that, as in *Barden*, the People failed to prove beyond a reasonable doubt that defendant assumed the identity of another person. The People argue that defendant assumed the identity of H&R Block Bank when she attempted to cash a check that contained the bank's personal identifying information (the company's name, address, account number, and routing number). However, the People did not demonstrate that the result of defendant's use of that information was that she assumed the bank's identity. To be sure, defendant presented a check containing the personal identifying information of H&R Block. However, the check was made payable to defendant, in her real name. Defendant presented her own identification establishing her identity as Blondine Destin, and signed her own name on the back of the check when the bank teller asked her to endorse it. None of the TD Bank employees were under the impression that defendant was anyone other than herself (*cf. Barden*, 117 AD3d at 229 [hotel employees knew the defendant was not using his own credit card]). Thus, as in *Barden*, the evidence was legally insufficient to establish that defendant committed identity theft, because she did not assume the identity of the victim (*see id.* at 225-226).

The People misplace reliance on *People v Sabouni* (61 AD3d 447, 447 [1st Dept 2009], *lv denied* 12 NY3d 929 [2009]), in

which this Court upheld the identity theft conviction of a defendant who "used a check routing number and bank account number of her former [labor] union to steal money from the union and use that money to pay her bills." *Sabouni* is a pre-*Barden*, short memorandum decision in which the Court had no occasion to decide whether the defendant assumed the identity of another, because the parties had not raised that issue (*see People v Louree*, 8 NY3d 541, 547 n [2007]). Moreover, *Sabouni* does not contain facts from which it can be inferred whether the defendant's use of her union's banking information constituted an assumption of identity.

In light of our determination that the verdict of guilty of identity theft in the first degree is not supported by legally sufficient evidence, we need not consider defendant's argument that the verdict is against the weight of the evidence.

■ Finally, the evidentiary rulings challenged by defendant were provident exercises of discretion that did not deprive her of a fair trial. The court's pretrial ruling pursuant to *People v Sandoval* (34 NY2d 371 [1974]) appropriately permitted inquiry into defendant's prior grand larceny conviction, notwithstanding some degree of similarity with the charged crime, because the prior crime and its facts were highly relevant to defendant's credibility (*see id.* at 377; *see also People v Hayes*, 97 NY2d 203 [2002]). Any prejudicial effect of that inquiry would have been minimal and outweighed by its probative value, since the inquiry would have been limited to one prior crime and the court would have instructed the jury to consider the prior conviction only to evaluate defendant's truthfulness, not as evidence of any criminal propensity. In addition, evidence of defendant's nearly contemporaneous attempt to cash a fraudulent check (at the fourth TD Bank branch), in addition to the fraudulent check on which the charges were based (the check defendant attempted to cash at the first TD Bank branch), was probative of her intent and the absence of mistake (*see generally People v Molineux*, 168 NY 264 [1901]; *see also People v Alvino*, 71 NY2d 233, 242-243 [1987]). The volume of evidence relating to the "uncharged" check did not cause undue prejudice, because the court instructed the jury that the check should be considered only as evidence of defendant's knowledge and intent, and could not be considered as evidence that defendant had a propensity to commit the charged crimes. Lastly, the court did not abuse its discretion in permitting a witness—one of the bank's employees who later became a po-

lice officer—to testify in his police uniform, be addressed as "Officer," and mention his current employment. This was not unduly prejudicial to defendant, particularly since the court instructed the jury to scrutinize a police officer's testimony by the same standards by which it would evaluate that of any other witness (*see People v Simms*, 124 AD2d 349 [3d Dept 1986], *lv denied* 69 NY2d 886 [1987]; *cf. People v Gadsden*, 80 AD2d 508 [1st Dept 1981] [court erred in failing to instruct jury that police witnesses should not be regarded as more or less credible than any other witness]).

Accordingly, the judgment of the Supreme Court, New York County (Gregory Carro, J.), rendered January 21, 2014, convicting defendant, after a jury trial, of criminal possession of a forged instrument in the second degree, identity theft in the first degree and four counts of attempted grand larceny in the third degree, and sentencing her, as a second felony offender, to concurrent terms of two to four years, should be modified, on the law, to the extent of vacating the identity theft conviction and dismissing that count of the indictment, and otherwise affirmed.

SWEENY, J.P., MAZZARELLI, MANZANET-DANIELS and WEBBER, JJ., concur.

Judgment Supreme Court, New York County, rendered January 21, 2014, modified, on the law, to the extent of vacating the identity theft conviction and dismissing that count of the indictment, and otherwise affirmed.