People v Cunny (2018 NY Slip Op 05191)





People v Cunny


2018 NY Slip Op 05191


Decided on July 11, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 11, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
HECTOR D. LASALLE
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2014-11394
 (Index No. 9785/12)

[*1]The People of the State of New York, respondent,
v
Charles Cunny, appellant.


Paul Skip Laisure, New York, NY (Leila Hull of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Camille O'Hara Gillespie, and Michael Brenner of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Vincent M. Del Giudice, J.), rendered November 20, 2014, convicting him of attempted assault in the first degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On the morning of June 7, 2012, the complainant was struck in the back of the head with a metal bat as he was walking past a construction site with his companion (hereinafter the complainant's companion). The complainant never saw the assailant, but the complainant recognized the assailant's voice as the voice of the defendant. The complainant and the defendant had known each other and had a contentious relationship since they were children. The complainant's companion, who had never met the defendant, saw the assailant and later identified the defendant as the assailant from a photographic array. The defendant was arrested and indicted for, inter alia, attempted assault in the first degree. The complainant's companion and the complainant alleged that, a few months after the June incident, the defendant approached them on the street to ask the complainant to drop the charges against the defendant. The defendant was later charged with witness tampering.
Following a pretrial Sandoval hearing (see People v Sandoval, 34 NY2d 371), the Supreme Court granted the People's application to cross-examine the defendant, in the event he were to testify, about the underlying facts of the defendant's 2006 conviction for attempted coercion. The defendant did not testify. We agree with the defendant that the court should not have granted the application.
"[T]he credibility of witnesses generally may be challenged by their prior crimes or bad acts"; however, "permitting impeachment of a criminal defendant in this fashion risks both that the trier of fact will view such evidence as proof of propensity to commit the crime charged and that the defendant may be unduly deterred from giving testimony" (People v Hayes, 97 NY2d 203, 207, citing Jerome Prince, Richardson on Evidence § 6-410 at 399 [Farrell 11th ed 1995]; see People v Smith, 18 NY3d 588, 593; People v Sandoval, 34 NY2d at 376). A Sandoval determination "rests largely within the reviewable discretion of the trial court, to be exercised in light of the facts and circumstances of the particular case before it" (People v Hayes, 97 NY2d at 207-208; see People v Williams, 12 NY3d 726, 727; People v Sandoval, 34 NY2d at 375). Although "questioning concerning other crimes is not automatically precluded simply because the crimes to be inquired [*2]about are similar to the crimes charged" (People v Pavao, 59 NY2d 282, 292; see People v Hayes, 97 NY2d at 208; People v Walker, 83 NY2d 455, 459), " cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility'" (People v Ridenhour, 153 AD3d 942, 943, quoting People v Sandoval, 34 NY2d at 377; see People v Brothers, 95 AD3d 1227, 1228-1229). Thus, "a balance must here be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf" (People v Sandoval, 34 NY2d at 375; see People v Ridenhour, 153 AD3d at 943; People v Calderon, 146 AD3d 967, 969).
In this case, the facts underlying the 2006 conviction, which involved the threatened use of a hammer as a blunt force weapon, may have had some probative value on the defendant's credibility. Nonetheless, any such probative value was clearly outweighed by the potential prejudicial effect of those facts (see People v Ridenhour, 153 AD3d at 942-943; People v Calderon, 146 AD3d at 971; People v Wright, 121 AD3d 924, 928). Contrary to the defendant's contention, however, the Supreme Court's Sandoval ruling did not deprive him of his right to a fair trial (see People v Crimmins, 36 NY2d 230, 237-238). Moreover, the error in the Sandoval ruling was harmless, as there was no reasonable possibility that the error might have contributed to the defendant's conviction (see People v Crimmins, 36 NY2d at 237).
The defendant concedes that the Supreme Court properly admitted evidence that the defendant's uncooperative behavior following his arrest led the police to decide not to conduct a lineup, and that thereafter, the complainant's companion identified the defendant from a photographic array (see People v Perkins, 15 NY3d 200, 204; People v Jones, 2 NY3d 235, 242; People v Adamson, 131 AD3d 701, 702). However, the defendant objects to the court's determination to admit into evidence testimony by the detective who arrested the defendant as to statements made to him by the defendant when the defendant was in a holding cell. The defendant contends that he was deprived of due process by the court "going a step further," and permitting the People to elicit the defendant's statements threatening to "bloody" the detective, take his "fucking gun and shoot" the detective, and punch him "in [his] fucking face." The defendant maintains that the statements were of minimal probative value on the one hand, while greatly prejudicing the defendant by portraying him "as the type of person who commits acts of explosive violence." We disagree as to the probative value of the evidence.
While consciousness of guilt evidence has consistently been viewed as weak because the connection between the conduct and a guilty mind often is tenuous, even equivocal consciousness of guilt evidence may be admissible if "it has a tendency to establish the fact sought to be proved—that defendant was aware of guilt" (People v Bennett, 79 NY2d at 470; see People v Yazum, 13 NY2d 302, 304; People v Braithwaite, 126 AD3d 993, 995-996). The Court of Appeals has held that "of course, the evidence that [defendant] resisted participation in a lineup [would be admissible], since that is clearly a possible consciousness of guilt evidence" (People v Perkins, 15 NY3d 200, 203). The defense strategy included both impugning the conduct of the police and suggesting that the complainant and the complainant's companion had fabricated the identification of the defendant as the perpetrator. Therefore, the defendant's statements in the holding cell, which led the police to forgo a lineup, were probative to explain why no lineup took place and to show that no police wrongdoing was involved in the decision not to conduct a lineup (see People v Frumusa, 29 NY3d 364; People v Morris, 21 NY3d 588, 598). In any event, the Supreme Court instructed the jurors that consciousness of guilt evidence has "only slight value," and that such evidence, standing alone, could never be the basis for a guilty verdict. The court further instructed the jurors that they were to disregard the evidence of the defendant's consciousness of guilt if they found that there was an innocent explanation for the defendant's behavior. Thus, "[a]ny ambiguity, as well as the limited probative worth of that evidence, was made perfectly clear to the jury by the court's lengthy limiting instruction" (People v Braithwaite, 126 AD3d at 996), which the jury is presumed to have followed (see People v Morris, 21 NY3d at 598), and which "served to alleviate any potential prejudice resulting from the admission of the evidence" (People v Rembert, 124 AD3d 805, 805).
The defendant's contention that he was deprived of the effective assistance of counsel is based, in part, on matter appearing on the record and, in part, on matter outside the record, and, thus, constitutes a "mixed claim of ineffective assistance" (People v Maxwell, 89 AD3d 1108, 1109; see People v Evans, 16 NY3d 571, 575 n 2). In this case, it is not evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel (cf. People v Crump, 53 NY2d 824, 825; People v Brown, 45 NY2d 852, 853). Since the defendant's claim of ineffective assistance of counsel cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety (see People v Marryshow, 135 AD3d 964, 965; People v Freeman, 93 AD3d 805, 806; People v Maxwell, 89 AD3d at 1109).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
DILLON, J.P., LASALLE, BARROS and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court