■ BARRY JACOBSON et al., Appellants, v McNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, a Division of McNEIL-PPC, INC., et al., Defendants, and G.D. SEARLE & Co. et al., Respondents. [891 NYS2d 387]—

On March 30, 2004, plaintiffs' nine-year-old daughter had two seizures and was brought to NYU-Tisch Hospital, where she was diagnosed with a brain tumor and hydrocephalus. Surgery was performed the next day to remove the tumor, but the child continued to have seizures thereafter. Her doctors prescribed Dilantin, an anticonvulsant, and several medications to treat the pain. On April 26, the child was transferred to the Rusk Institute of Rehabilitation Medicine. While there, the child continued to receive Dilantin and was prescribed additional medications including Flagyl and Children's Motrin. On or about May 6, the child developed a rash and fever and was readmitted to Tisch Hospital for treatment, where she was diagnosed with Stevens-Johnson syndrome (SJS), which later progressed into toxic epidermal necrolysis (TEN). Both conditions are characterized by rashes, blisters and large areas of

skin peeling off. On May 12, the child was transferred to the burn unit at Cornell Medical Center for further treatment. Over the course of the next 21 days, her condition continued to deteriorate. On June 2, 2004, the child died of TEN, complicated by multiorgan failure.

On May 1, 2006, plaintiffs commenced this wrongful death action against G.D. Searle & Co., Pharmacia Corp., Pharmacia & Upjohn Company, Pfizer (collectively, the Pfizer defendants), and McNeil Consumer & Specialty Pharmaceuticals. On May 9, 2006, plaintiffs filed an amended complaint adding John Doe corporations, physicians and health care providers as parties. Both the initial and first amended complaints alleged that Flagyl and Children's Motrin, manufactured by the named defendants, caused the child to develop SJS/TEN, which ultimately caused her death.

On or about September 4, 2008, plaintiffs retained new counsel. Promptly thereafter, on September 15, the new attorneys moved to amend the first amended complaint to add Dilantin, a drug manufactured by the Pfizer defendants, to the claims already made about Flagyl and Children's Motrin. The proposed second amended complaint did not seek to add any new defendants. The motion to amend was denied, and this appeal ensued.

CPLR 3025 (b) specifies: "A party may amend his pleading . . . at any time by leave of court," and "[l]eave shall be freely given upon such terms as may be just." Accordingly, leave to amend a complaint to add an additional theory of liability is generally granted when the defendants were placed on notice of such theory by the allegations in the initial complaint, such that the defendants cannot establish that they will be prejudiced by the amended complaint (*Panto v J & M Salvage Co.*, 157 AD2d 582 [1990]). If the amended complaint includes time-barred claims, these claims are deemed to have been interposed at the time of the initial complaint when the initial complaint gave notice of the series of occurrences to be proved pursuant to the amended complaint (*id.*; CPLR 203 [f]).

In the initial and amended complaints, plaintiffs' allegations arise out of the child's postoperative treatment from March 31 through June 2, 2004. Both the initial and the first amended complaints specifically alleged facts related to the use of Dilantin, and both complaints noted that "on March 31, 2004 . . . [the child's] postoperative course was complicated by seizures, which required the use of Dilantin." All versions of the complaint mentioned that the child's "medications upon admission [to the Rusk Institute] on April 26, 2004 included

Colace, Dilantin, Pepcid, Decadron, Tylenol, and Proventil," and that "by April 29, 2004 . . . [t]he Dilantin was reduced to sub-therapeutic levels." The second amended complaint did not allege any new facts or occurrences, but merely set forth an additional legal theory, namely, that Dilantin was another possible cause of the child's development of SJS/TEN. As such, we conclude that the initial pleading provided sufficient notice of the series of occurrences from which the Dilantin claims arise.

The Pfizer defendants have not established that they would be prejudiced by allowing the second amended complaint. When plaintiffs moved to amend the complaint a second time in September 2008, fact discovery was still being conducted, the deadline to complete expert depositions was eight months away, the deadline to file a note of issue was nine months away, and no trial date had yet been set. Upon the filing of the second amended complaint, it does not appear that the Pfizer defendants will have to request significant additional records because the Dilantin claims are based upon the same medical records as plaintiffs' Flagyl and Children's Motrin claims. Notably, the record indicates that all of these records were previously obtained by defendants. Likewise, the record indicates that Pfizer has been repeatedly sued regarding Dilantin such that Pfizer went so far as to establish a "Dilantin settlement program." As such, the Pfizer defendants are already aware of the potential issues concerning this drug and can easily compile the necessary documents to respond to plaintiffs' Dilantin-based discovery requests. Moreover, the need for additional discovery does not constitute prejudice sufficient to justify denial of an amendment (*Rutz v Kellum*, 144 AD2d 1017, 1018 [1988]).

The Pfizer defendants' contention that plaintiffs and the treating medical staff will have difficulty remembering the pertinent facts regarding Dilantin is illogical, given that the claims regarding Flagyl and Children's Motrin involved the same set of facts, namely, the child's postoperative treatment. Indeed, the record contains excerpts of deposition testimony from plaintiffs and the child's principal treating physicians that specifically discuss when the child received doses of Dilantin, and that drug's known association with SJS/TEN.

The Pfizer defendants also contend that they will have to alter their defense strategy to address the Dilantin claims. We reject that argument. Prejudice does not occur simply because a defendant is exposed to greater liability (*Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23 [1981]) or because a defendant has to expend additional time preparing its case (*Rutz*, 144 AD2d at 1018). Rather, prejudice occurs when the party op-

posing amendment "has been hindered in the preparation of his case or has been prevented from taking some measure in support of his position" (*Loomis*, 54 NY2d at 23).

In the absence of prejudice, plaintiffs' delay in seeking to amend a second time is not a sufficient reason to deny the amendment (*Sheppard v Blitman/Atlas Bldg. Corp.*, 288 AD2d 33, 34 [2001]; *see also Masterwear Corp. v Bernard*, 3 AD3d 305, 306 [2004]). Plaintiffs and their current counsel offered a reasonable excuse for their delay, noting that it was a result of an oversight by a previous attorney (*see Carte v Segall*, 134 AD2d 397 [1987]; *see also Di Simone v Good Samaritan Hosp.*, 100 NY2d 632 [2003]). This oversight was promptly rectified by plaintiffs' current counsel as soon as they came into the case. Concur—Saxe, J.P., Sweeny, Moskowitz and Richter, JJ.