[60 NYS3d 128]

Margaret O'Halloran, Respondent, v Metropolitan Transportation Authority et al., Appellants.

First Department, August 22, 2017

**APPEARANCES OF COUNSEL**

*Steve S. Efron*, New York City, for appellants.

*The Kurland Group*, New York City (*Erica T. Kagan* of counsel), for respondent.

**OPINION OF THE COURT**

Acosta, P.J.

The narrow issue on appeal is whether the motion court providently permitted plaintiff to amend her complaint to include belated claims of discrimination on the basis of sexual orientation on the ground that those claims related back to the original pleading, which timely alleged, inter alia, discrimination on the basis of gender. We hold that it did, because the original pleading gave defendants notice of the occurrences plaintiff seeks to prove pursuant to her amended complaint (*see* CPLR 203 [f]), and defendants will not suffer undue prejudice as a result of the delay (*see* CPLR 3025 [b]). Therefore, we affirm.

Plaintiff, a lesbian, has been employed by the three organizational defendants—Metropolitan Transportation Authority (MTA), New York City Transit Authority (NYCTA), and MTA Bus Company (MTA Bus)—in various capacities since 1987. Beginning in November 2008, plaintiff served as Assistant Chief Facilities Officer for Business Planning and Administration for NYCTA. She reported to NYCTA's Chief Facilities Officer, and, until 2012, received excellent annual reviews and had never been subject to disciplinary action. In 2011, NYCTA's Chief of Staff denied plaintiff an interview for the position of Chief Facilities Officer and Vice President, although similarly situated male colleagues were granted interviews. In January 2012, defendant George Menduina was promoted to Chief Facilities Officer at NYCTA and Vice President for Facilities at

MTA Bus. Plaintiff alleges that upon his promotion, Menduina and others began to subject her to discrimination.[1]

Plaintiff filed the original complaint in this action on November 25, 2013, asserting causes of action for, among other things, discrimination on the basis of sex and disability and retaliation in violation of the New York State and New York City Human Rights Laws (Executive Law § 290 *et seq.* [the State HRL]; Administrative Code of City of NY § 8-101 *et seq.* [the City HRL]). After her deposition, plaintiff moved pursuant to CPLR 3025 for leave to amend her complaint to add claims that defendants also discriminated against her because of her sexual orientation.[2] Plaintiff conceded that the sexual orientation claims were asserted after the statute of limitations had run (*see* CPLR 214 [2]), but argued that the relation-back doctrine (CPLR 203 [f]) rendered them timely because those claims were "based on the same allegations as the original pleading." She also argued that defendants would not be prejudiced by the proposed amendment, because discovery had not been completed.

Defendants opposed the motion, contending that the original complaint did not provide them with "notice of the facts underlying" plaintiff's sexual orientation claims. Defendants noted that the original complaint did not allege that plaintiff is a lesbian or that their actions were motivated by her sexual orientation.

The motion court granted the motion, reasoning that defendants "faile[d] to overcome the heavy presumption of validity in favor of permitting the amendment" and that defendants "will not be prejudiced or surprised from the delay . . . because the

---

1. For example, plaintiff alleges that Menduina denied her the opportunity to be involved in operations work, rendering her ineligible for future promotions, that Menduina made personnel changes to the unit she managed without consulting her, that Menduina assigned her tasks without giving her proper support, resources, or training and then criticized her for failing to timely complete assignments, that Menduina gave her unreasonable deadlines, which were less favorable than those given to her similarly situated male colleagues, and that, after she filed an internal complaint with NYCTA's Office of Equal Employment Opportunity, Menduina brought disciplinary charges against her, which resulted in her demotion to a position with a substantial reduction in salary.

2. Specifically, plaintiff supported her new claims with allegations that she is a lesbian, that Menduina was aware of that fact, and that one of her supervisors, also an out lesbian, was demoted in retaliation for submitting a letter in support of plaintiff's prior appeal before NYCTA's Office of Equal Employment Opportunity, which had sustained disciplinary changes brought against her by Menduina.

facts within the complaint remain the same" (2016 NY Slip Op 31567[U], * 3). The court concluded that "[t]he amended claims are premised upon the same subject matter alleged in the original complaint" (*id.*). Defendants appealed.

"It is well established that leave to amend a pleading [pursuant to CPLR 3025 (b)] is freely given 'absent prejudice or surprise resulting directly from the delay' " (*Anoun v City of New York*, 85 AD3d 694, 694 [1st Dept 2011], quoting *Fahey v County of Ontario*, 44 NY2d 934, 935 [1978]). "A party opposing leave to amend 'must overcome a heavy presumption of validity in favor of [permitting amendment]' " (*McGhee v Odell*, 96 AD3d 449, 450 [1st Dept 2012], quoting *Otis El. Co. v 1166 Ave. of Ams. Condominium*, 166 AD2d 307 [1990]).

The relation-back doctrine, now codified in CPLR 203 (f), provides that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions [or] occurrences . . . to be proved pursuant to the amended pleading" (CPLR 203 [f]; *see also Giambrone v Kings Harbor Multicare Ctr.*, 104 AD3d 546, 548 [1st Dept 2013] [making clear that the "salient inquiry" in deciding whether an otherwise untimely claim in an amended pleading relates back to a timely commenced action "is not whether defendant had notice of the *claim*, but whether, as the statute provides, the original pleading gives 'notice of the transactions (or) occurrences . . . to be proved pursuant to the amended pleading' " (emphasis added)]). The doctrine is "[a]imed at liberalizing the strict, formalistic pleading requirements of the [nineteenth] century, . . . while at the same time respecting the important policies inherent in statutory repose," and "enables a plaintiff to correct a pleading error—by adding either a new claim or a new party—after the statutory limitations period has expired" (*Buran v Coupal*, 87 NY2d 173, 177 [1995] [citations omitted]). It is within courts' "sound judicial discretion to identify cases that justify relaxation of limitations strictures . . . to facilitate decisions on the merits if the correction will not cause undue prejudice to the plaintiff's adversary" (*id.* at 178 [internal quotation marks and citation omitted]).

The Court of Appeals has recognized that a more relaxed standard applies where a plaintiff seeks to use the relation-back doctrine by adding a new claim against a defendant who is already a party to litigation as opposed to adding a new defendant (*Buran*, 87 NY2d at 178 ["allowing the relation back of

amendments adding new defendants implicates more seriously the( ) policy concerns (underlying statutes of limitation) than simply the relation back of new causes of action since, in the latter situation, the defendant is already before the court"]); *see also Duffy v Horton Mem. Hosp.*, 66 NY2d 473, 477 [1985] ["An amendment which merely adds a new theory of recovery or defense arising out of a transaction or occurrence already in litigation clearly does not conflict with the( ) policies" underlying statutes of limitation—i.e., repose and the conservation of judicial resources—because "(a) party is likely to have collected and preserved available evidence relating to the entire transaction or occurrence and the defendant's sense of security has already been disturbed by the pending action"]). Thus, although the Court of Appeals has adopted a three-part test for determining whether to apply relation back to an amended pleading that adds a new *defendant*, no such test applies where a plaintiff simply seeks the relation back of a new *claim* (*see Buran*, 87 NY2d at 178). In other words, where, as here, a proposed amended complaint contains an untimely claim against a defendant who is already a party to the litigation, the relevant considerations are simply (1) whether the original complaint gave the defendant notice of the transactions or occurrences at issue and (2) whether there would be undue prejudice to the defendant if the amendment and relation back are permitted (*see* CPLR 203 [f]; 3025 [b]; *see Buran*, 87 NY2d at 178; *Caffaro v Trayna*, 35 NY2d 245, 251 [1974]).

In accordance with these principles, we hold that the motion court providently exercised its discretion when it permitted plaintiff to amend her complaint to add her otherwise untimely claims of sexual orientation discrimination. All of plaintiff's claims are based on the same occurrences—namely the underlying employment actions taken against her—and the original complaint put defendants on notice of those occurrences. To be sure, plaintiff's original complaint did not allege the specific facts that she is a lesbian, that defendants were aware of her sexual orientation, that defendants discriminated against her on that basis, or that another lesbian colleague was demoted for supporting her internal dispute with Menduina. Nevertheless, the motion court correctly determined that the new claims are based on "the same subject matter alleged in the original complaint." Defendants need not have been put on notice of every factual allegation on which the subsequent claims depend, because the original complaint put

them on notice of the occurrences that underlie those claims (*see Schneidman v Tollman*, 279 AD2d 276, 276 [1st Dept 2001] [motion court "properly found that plaintiffs' amended pleadings were not time-barred, since they relate back to the original complaint, merely adding additional factual detail" (internal quotation marks omitted)]).

Viewing "transactions [or] occurrences" through this broad lens for the purposes of relation back under CPLR 203 (f) is especially important in the context of anti-discrimination actions—particularly those actions brought under the City HRL—in which it is frequently difficult for plaintiffs to articulate their employers' motivations for treating them less well than other employees (*see Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 37 [1st Dept 2011] ["discrimination rarely announces itself," and "the defendant, by definition, is in a materially better position to provide evidence as to its actual motivation than the plaintiff"], *lv denied* 18 NY3d 811 [2012]). Of course, it is preferable that a plaintiff set forth every factual allegation on which her claims are based, but in these circumstances plaintiff should not be faulted for not previously raising her sexual orientation as a basis for defendants' unfavorable treatment of her.[3] In this case, the occurrences underlying the new claim are defendants' general treatment of plaintiff (e.g., denying her an opportunity to interview for advancement, giving her tighter deadlines than other employees, instituting disciplinary proceedings against her, and demoting her), all of which occurred on the same dates and in the same instances as alleged in the original complaint. That plaintiff now seeks to include another *reason* for those occurrences and another theory of liability cannot be fairly characterized as a failure to give notice of the occurrences she seeks to prove in her amended complaint.

Moreover, defendants will not be unduly prejudiced or surprised by allowing plaintiff to amend the complaint to add

---

3. To be sure, plaintiff could have previously raised her sexual orientation as a basis for defendants' actions, and it is unclear why she waited until proposing an amended complaint. But we should not attempt to decipher plaintiff's decision to raise the new claims for the first time in her proposed amended complaint, as such an analysis is unnecessary (and likely futile) insofar as the original complaint provided notice of the occurrences underlying her belated claims.

And although, as the dissent points out, the State and City HRLs list gender and sexual orientation as separate protected statuses, at least one federal circuit court has recently determined that sexual orientation discrimination is, in essence, "sex discrimination" (*see Hively v Ivy Tech Community Coll. of Indiana*, 853 F3d 339, 345 [7th Cir 2017]).

her new claims, because they have not been "hindered in the preparation of [their] case or . . . prevented from taking some measure in support of [their] position" (*Jacobson v McNeil Consumer & Specialty Pharms.*, 68 AD3d 652, 654-655 [1st Dept 2009] [internal quotation marks omitted]; *see also Buran*, 87 NY2d at 178). "Prejudice does not occur simply because a defendant is exposed to greater liability or because a defendant has to expend additional time preparing its case" (*Jacobson*, 68 AD3d at 654 [citation omitted]). When defendants were first confronted with plaintiff's original claims, it is likely that they conducted some kind of internal investigation into the entire series of alleged actions taken against plaintiff, to determine whether and on what grounds she was discriminated against (*see Duffy*, 66 NY2d at 477 [defendants are "likely to have collected and preserved available evidence relating to the entire transaction or occurrence" at the outset of the litigation]). Thus, they ought to know the discriminatory reasons for which plaintiff was treated unfavorably, if any such reasons exist. In any event, to the extent any prejudice against defendants exists, it is negligible and can be cured by further discovery (*Jacobson*, 68 AD3d at 654 ["(T)he need for additional discovery does not constitute prejudice sufficient to justify denial of an amendment"]).[4]

The dissent's incorrect application of the relation-back doctrine is evident throughout its opinion. First, the dissent gives short shrift to the discretionary nature of the motion court's ruling that the relation-back doctrine applied to plaintiff's new claims (*see Buran*, 87 NY2d at 177-178). Second, the dissent mistakenly focuses its attention on whether the original complaint provided notice to defendants of plaintiff's newly added claims instead of "whether, as the statute provides, the original pleading gives 'notice of the transactions [or] occurrences . . . to be proved pursuant to the amended pleading' " (*Giambrone*, 104 AD3d at 548, quoting CPLR 203 [f]). Despite

---

4.  We note that, in her brief, plaintiff states that "Defendants questioned Plaintiff regarding, and there were many references to, Plaintiff's spouse during Plaintiff's deposition." Moreover, before moving to amend the complaint, plaintiff's counsel had offered to submit plaintiff for another hour of deposition so that defendants could question her about details surrounding the alleged sexual orientation discrimination. Defendants' counsel declined that offer in an email to plaintiff's counsel, but requested of the motion court that they be permitted to further depose plaintiff in the event she was allowed to amend her complaint. In view of our affirmance of the grant of plaintiff's motion, we grant defendants' request for an opportunity to further depose plaintiff with regard to her new claims.

the dissent's attempt to distinguish *Giambrone* on its facts, the rule articulated in that case (and in the relation-back statute) remains applicable here. Yet the dissent distracts from the "salient inquiry" (*id.*) by focusing on whether defendants had knowledge of her new claims. That view of the relation-back doctrine leads the dissent to the incorrect conclusion that plaintiff's new claims should not be considered on their merits.

The dissent observes that our sister departments permit the application of the relation-back doctrine to claims that state a new theory of recovery but that this Court has declined to do so where the new claim is based upon "a new, distinct, and independent theory of liability" (quoting *Robinson v New York City Hous. Auth.*, 89 AD3d 497, 497 [1st Dept 2011]). However, as the dissent acknowledges, for that proposition *Robinson* relied on a case applying General Municipal Law § 50-e (6), which sets forth the standard for permitting new allegations in a corrected notice of claim in tort actions against municipalities, *not* on cases applying the relation-back doctrine codified in CPLR 203 (f). Additionally, *Robinson* cannot be reconciled with the Court of Appeals' guidance that "[a]n amendment which merely adds a new theory of recovery or defense arising out of a transaction or occurrence already in litigation clearly does not conflict with the[ ] policies" underlying statutes of limitation (*Duffy*, 66 NY2d at 477) or this Court's admonishment against "disregard[ing] the purpose of the relation back doctrine, which 'enables a plaintiff to correct a pleading error—by adding either a new claim or a new party—after the statutory limitations period has expired' " (*Giambrone*, 104 AD3d at 548, quoting *Buran*, 87 NY2d at 177).

Furthermore, the dissent unnecessarily delves into a motion-to-dismiss analysis under CPLR 3211 (a) (7), notwithstanding the procedural posture of this case (a motion to amend the complaint) and the fact that defendants do not raise that issue on appeal. In doing so, the dissent skirts the broad City HRL protections recognized by this Court, the Court of Appeals, and the United States Court of Appeals for the Second Circuit (*see e.g. Williams v New York City Hous. Auth.*, 61 AD3d 62 [1st Dept 2009], *lv denied* 13 NY3d 702 [2009]; *Romanello v Intesa Sanpaolo, S.p.A.*, 22 NY3d 881 [2013]; *Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102 [2d Cir 2013]).[5] The dissent cites *Matz v Prospect Energy Corp.* (63 AD3d 619 [1st

---

5. The City Council recently amended the City HRL to add in pertinent part that "[c]ases . . . that have developed legal doctrines . . . that reflect

Dept 2009]), which in turn relied on *Brennan v Metropolitan Opera Assn.* (284 AD2d 66 [1st Dept 2001]), a pre-*Williams* case that was not required to consider a broad construction of the City HRL. By citing *Brennan* for the proposition that plaintiff must allege that she was subjected to an adverse employment action, the dissent overlooks this Court's more recent controlling precedent, which emphasizes the greater protections afforded to plaintiffs under the City HRL. Indeed, as this Court has emphasized, the City HRL does not require that a plaintiff suffer a materially adverse employment action in order to succeed in an anti-discrimination action under the City HRL (*see Williams*, 61 AD3d at 70-71, quoting Administrative Code § 8-107 [7] ["(t)he retaliation or discrimination complained of . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment" (internal quotation marks omitted)]). And, in any event, "employment discrimination cases are themselves generally reviewed under notice pleading standards" (*Vig v New York Hairspray Co., L.P.*, 67 AD3d 140, 145 [1st Dept 2009]).

Furthermore, the dissent would erroneously penalize plaintiff, in part, for failing to claim discrimination on the basis of sexual orientation in the proceedings that occurred before this action was commenced. That plaintiff could have raised the issue in those prior proceedings, however, has no bearing on the question before us. The relation-back statute does not require that a plaintiff *at any point prior to the original pleading* give notice of the transactions or occurrences sought to be proved pursuant to an amended pleading, and we should not read such an additional requirement into the statute.

At this early stage of the litigation, it is equally possible that plaintiff suffered discrimination because of her gender or because of her sexual orientation, or both, or that she did not suffer discrimination at all. The answer lies with defendants and will be revealed through further discovery, and plaintiff will still be put to the burden of proving any discrimination after such discovery takes place. Therefore, given the absence or

---

the broad and remedial purposes of [the City HRL] include Albunio v. City of New York, 16 N.Y.3d 472 (2011), Bennett v. Health Management Systems, Inc., 92 A.D.3d 29 (1st Dep't 2011), and the majority opinion in Williams v. New York City Housing Authority, 61 A.D.3d 62 (1st Dep't 2009)" (Administrative Code § 8-130 [c], as amended by Local Law No. 35 [2016] of City of NY § 2).

negligible amount of prejudice to defendants and the fact that they had notice of the occurrences on which plaintiff's new claims of sexual orientation discrimination are based, the motion court providently exercised its discretion in granting plaintiff leave to amend her complaint to add her new, otherwise untimely claims (*see Buran*, 87 NY2d at 177-178).

Accordingly, the order of the Supreme Court, New York County (Manuel J. Mendez, J.), entered August 17, 2016, which granted plaintiff's motion for leave to amend the complaint to add claims for sexual orientation discrimination under the New York State and City Human Rights Laws, should be modified, on the law and the facts and in the exercise of discretion, to allow further disclosure as necessary (including the deposition of plaintiff as indicated herein), and otherwise affirmed, with costs.

KAHN, J. (dissenting). I believe that plaintiff's concededly untimely claims of sexual orientation discrimination under the New York State and City Human Rights Laws (State and City HRLs) are not saved by the CPLR 203 (f) relation-back exception. I further believe that plaintiff's new claims, as pleaded in the proposed amended complaint, fail to state causes of action. Accordingly, I respectfully dissent.

The facts as alleged in the complaint are as follows. Plaintiff has been employed by defendants Metropolitan Transportation Authority, New York City Transit Authority (NYCTA) and MTA Bus Company since 1987. Beginning in November 2008, plaintiff, who is a lawyer, served as Assistant Chief Facilities Officer for Business Planning and Administration for NYCTA. She reported to NYCTA's Chief Facilities Officer and, until 2012, received excellent annual reviews and had never been subject to disciplinary action. In 2011, the Chief of Staff at NYCTA denied plaintiff the opportunity to interview for the position of Chief Facilities Officer and Vice President at NYCTA, although similarly situated male colleagues were granted interviews, and one of them ultimately got the job.

In January 2012, defendant George Menduina became plaintiff's immediate supervisor. Plaintiff alleges that subsequently and throughout the period ending July 2012, Menduina and others began to subject plaintiff to discrimination through such actions as making unannounced changes to her staff and imposing unreasonable deadlines on her work.

In August 2012, plaintiff filed an internal complaint with NYCTA's Office of Equal Employment Opportunity (NYCTA OEEO), based solely on claims of gender discrimination. In filing her claim, plaintiff checked the box on the preprinted form for "Sex/Gender," but not the box for "Sexual Orientation."

On November 29, 2012, Menduina brought disciplinary charges against plaintiff. On January 3, 2013, plaintiff filed a second internal complaint with the NYCTA OEEO, asserting that the disciplinary charges were brought against her in retaliation for her first complaint and that she had been denied a reasonable accommodation for an alleged disability. On January 17, 2013, the NYCTA OEEO upheld the disciplinary charges against plaintiff. Subsequently, plaintiff commenced an appeal within the NYCTA OEEO.

On February 5, 2013, plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (US EEOC) and requested a dual filing with the New York State Division of Human Rights (DHR).

On February 27, 2013, the NYCTA OEEO sustained the disciplinary charges against plaintiff. On February 28, 2013, Menduina sent a letter to plaintiff notifying her that, as a penalty, NYCTA would demote her to a position at a reduced salary, effective March 4, 2013.

On June 4, 2013, the US EEOC issued a right-to-sue letter dismissing plaintiff's US EEOC and DHR complaints.

On August 30, 2013, plaintiff commenced an action in the United States District Court for the Southern District of New York asserting various causes of action consistent with her NYCTA OEEO, US EEOC, and DHR complaints, alleging claims of gender and disability discrimination, as well as retaliation. Consistent with her administrative complaints; she did not assert any claim of sexual orientation discrimination.

On November 25, 2013, plaintiff withdrew her federal complaint and commenced the instant action. While the original complaint included claims of gender and disability discrimination, as well as retaliation, it did not include any claim of sexual orientation discrimination or gender stereotyping.

In March 2016, plaintiff was deposed in the instant action over a period of two days. Based on the record before us, it cannot be determined whether plaintiff made any mention in her testimony of her sexual orientation or of having been subjected to sexual orientation discrimination.[1]

On May 24, 2016, plaintiff moved for leave to amend her complaint, and submitted a proposed amended complaint. Apart from non-substantive additions and deletions, the proposed amended complaint added claims of sexual orientation discrimination under the State and City HRLs. In support of those claims, the proposed amended complaint includes plaintiff's identification of herself as a lesbian and an allegation that Menduina was aware of her sexual orientation at the time defendants took the job actions adverse to her. In further support of plaintiff's sexual orientation claims, the proposed amended complaint alleged that plaintiff's former supervisor, who is also an out lesbian, wrote a letter in support of plaintiff's NYCTA OEEO appeal and was herself demoted by defendants in retaliation. On June 10, 2016, defendants submitted an affirmation in opposition to plaintiff's motion, arguing that the new claims were barred by the applicable three-year statute of limitations.

In an order entered August 17, 2016, Supreme Court granted plaintiff's motion (2016 NY Slip Op 31567[U]). The court found that defendants had failed to overcome the heavy presumption of validity in favor of amendment of the complaint. It concluded that the new claims of sexual orientation discrimination were not time-barred, because they were premised on the same subject matter as alleged in the original complaint and therefore related back in time to the interposition of the causes of action in the original complaint, pursuant to CPLR 203 (f). The court further found that defendants were neither prejudiced nor unfairly surprised by the added sexual orientation discrimination claims, because the facts set forth in the complaint remained the same, and the new claims would nei-

---

1. The parties dispute whether reference was made to plaintiff's sexual orientation during her deposition. However, plaintiff did not include a copy of the transcript of the deposition as an exhibit to her written submissions to this Court (see CPLR 3025 [b]; *Bag Bag v Alcobi*, 129 AD3d 649, 649 [1st Dept 2015] ["a motion for leave to amend a pleading must be supported by . . . evidentiary proof that could be considered upon a motion for summary judgment"]). Therefore, there is no basis in the record upon which this Court may determine whether plaintiff made any reference to her sexual orientation in her deposition testimony.

ther cause a change in defendants' position nor hinder the preparation of defendants' case. However, the court did not address defendants' request for a further deposition of plaintiff on the subject of her added sexual orientation discrimination claims.

Defendants' principal argument on appeal is that plaintiff should not have been granted leave to add her concededly untimely sexual orientation discrimination claims to the complaint because the relation-back exception to the timeliness requirement is inapplicable in these circumstances.

Under the relation-back exception to the three-year statute of limitations applicable to claims made pursuant to the State and City HRLs (*see* CPLR 214 [2]), a new cause of action asserted in an amended pleading is deemed to have been interposed at the same time as the causes of action set forth in the original pleading, provided that the original pleading gave the defendants "notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading" (CPLR 203 [f]).

> "[T]he [relation-back] doctrine enables a plaintiff to correct a pleading error—by adding either a new claim or a new party—after the statutory limitations period has expired. The doctrine thus gives courts the sound judicial discretion to identify cases that justify relaxation of limitations strictures . . . to facilitate decisions on the merits if the correction will not cause undue prejudice to the plaintiff's adversary" (*Buran v Coupal*, 87 NY2d 173, 177-178 [1995] [internal quotation marks and citations omitted]).

The other departments of the Appellate Division construe the CPLR 203 (f) relation-back exception as applicable to claims stating a new theory of recovery (*see e.g. Cady v Springbrook NY, Inc.*, 145 AD3d 846 [2d Dept 2016]; *Matter of Clairol Dev., LLC v Village of Spencerport*, 100 AD3d 1546, 1546-1547 [4th Dept 2012]; *US Bank N.A. v Gestetner*, 103 AD3d 962, 965 [3d Dept 2013]; *cf. Robinson v New York City Hous. Auth.*, 89 AD3d 497, 497 [1st Dept 2011] [declining to permit amendment of complaint to relate back under CPLR 203 (f) where based upon "a new, distinct, and independent theory of liability," citing *Lopez v New York City Hous. Auth.*, 16 AD3d 164, 165 (1st

Dept 2005), so holding in a case relying on precedent pertaining to General Municipal Law § 50-e (6)]).[2]

It is clear, however, that the linchpin of the relation-back exception is universally recognized to be the defendant's receipt of notice, within the applicable limitations period, of the factual basis for any new claim (*see Buran v Coupal*, 87 NY2d at 180, citing *Schiavone v Fortune*, 477 US 21, 31 [1986]; *Kirk v University OB-GYN Assoc., Inc.*, 104 AD3d 1192, 1194 [4th Dept 2013]; *Fisher v Giuca*, 69 AD3d 671, 672 [2d Dept 2010]; *Gaspari v Sadeh*, 61 AD3d 405, 406 [1st Dept 2009]; *see also Cady*, 145 AD3d at 847 ["Where . . . the original allegations did not provide the defendants notice of the need to defend against the allegations of the amended complaint, the (relation-back) doctrine is unavailable"]; *US Bank*, 103 AD3d at 964-965 ["Plaintiff's claims . . . are deemed to have been interposed at the time of its original complaint, to the extent that it '(gave) notice of the transactions (or) occurrences . . . to be proved pursuant to the amended pleading' "], quoting CPLR 203 [f]). Accordingly, if the original complaint fails to fairly apprise defendants of the transaction or occurrence to be proven pursuant to the amended complaint, then application of the relation-back doctrine to permit addition of time-barred claims is improper.

In this case, plaintiff concedes that her proposed new sexual orientation discrimination claims are facially untimely. Additionally, plaintiff has never proffered any explanation for the delay in raising her sexual orientation claims until after the statute of limitations had expired.

With regard to whether the relation-back exception to the timeliness requirement is applicable in this case, while the original complaint included factual allegations in support of its claims of gender and disability discrimination, as well as retaliation, it contained no factual allegations as to any transactions or occurrences attributed by plaintiff to discrimination on the basis of sexual orientation. Indeed, although plaintiff filed a series of complaints both within her own agency and with administrative agencies and courts on both the federal and state level, she never asserted a claim of sexual orientation discrimination in any of those complaints. Neither does the record reveal any mention by her of sexual orientation

---

**2.** Although the majority now finds fault with our recent ruling in *Robinson*, its disparagement of that decision has no bearing on plaintiff's claims, which, in any case, fail for the separate reasons stated herein.

discrimination in two days of deposition testimony. Thus, defendants were provided with no notice of any transactions or occurrences that plaintiff intended to use to prove the sexual orientation discrimination claims she now seeks to add by way of her proposed amended complaint. In any event, even actual notice of a potential sexual orientation claim would not suffice to permit plaintiff to invoke the relation-back doctrine, because notice of the potential claim, including the conduct with which defendants would be charged in the new claim, must be provided in the original pleading itself (*Cooper v Sleepy's, LLC*, 126 AD3d 664, 666 [2d Dept 2015]; *August Bohl Contr. Co., Inc. v L.A. Swyer Co., Inc.*, 74 AD3d 1649, 1651 [3d Dept 2010]).

Moreover, this is clearly not a case fitting within the *Buran* rubric in which plaintiff's counsel made a pleading error in the original complaint and now, more than three years after raising plaintiff's original discrimination claims, proposes to correct it. There is nothing in the written submissions or the record evidence before this Court to support the notion that any such error was made. It is highly unlikely that plaintiff, who is an attorney and has been represented by counsel throughout these proceedings, merely overlooked this claim, as the majority suggests. Thus, I believe that in this case there is no basis to apply the relation-back doctrine for error correction purposes, as contemplated in *Buran* (*see Buran v Coupal*, 87 NY2d at 177).

Furthermore, as the pertinent language of both the State and City HRLs makes clear, sex/gender discrimination and sexual orientation discrimination are separate and distinct categories (*see* Executive Law § 296 [1] [a]; Administrative Code of City of NY § 8-107 [1] [a] [3]). Because these statutes expressly proscribe sexual orientation discrimination, this case does not require us to interpret the scope of conduct covered by the State and City HRLs' prohibitions against sex or gender discrimination.[3]

As the majority observes, in general, remedial statutes should be liberally construed in order to carry out their

---

**3.** Compare Edwards v Nicolai, 153 AD3d 440 (1st Dept 2017) (requiring interpretation of scope of gender discrimination provision of City HRL, decided herewith); *see Whitaker By Whitaker v Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F3d 1034 (7th Cir 2017) (favoring broad interpretation of title IX of Education Amendments Act of 1972 [20 USC § 1681 *et seq.*]); *see also Christiansen v Omnicom Group, Inc.*, 852 F3d 195, 201-205 (2d Cir 2017, Katzmann, Ch. J., concurring) (favoring broad interpretation of sex discrimination provision of title VII, section 703 of the

intended reforms and to promote justice (McKinney's Cons Laws of NY, Book 1, Statutes § 321; *see People v Brown*, 25 NY3d 247, 251 [2015]). It is well settled that the terms of the State HRL must be liberally construed to accomplish the statute's intended purpose (*Matter of Cahill v Rosa*, 89 NY2d 14, 20 [1996]; Executive Law § 300) and that courts must interpret the City HRL even more broadly than its State counterpart, being "sensitive to the distinctive language, purposes and method of analysis required" by the City HRL (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 65 [1st Dept 2009, Acosta, J.], *lv denied* 13 NY3d 702 [2009]; Local Civil Rights Restoration Act of 2005 [Local Law No. 85 (2005) of City of NY, amending Administrative Code of City of NY § 8-130] [Restoration Act]).

Here, however, this Court is not being called upon to interpret the State and City HRLs. Rather, this case calls for an application of a pleading requirement, set forth in *Buran* and its progeny and codified in CPLR 203 (f), to justify an exception to the three-year statute of limitations for bringing claims under the HRLs. It is suggested by the majority that the liberal construction rules of statutory interpretation for the HRLs should be extended to obviate the need for a plaintiff to comply either with the statute of limitations or with the pleading and notice requirements of the relation-back doctrine. However, I have found no cases, including those cited by the parties and the majority, in which a broadly construed provision of the State and City HRLs overcomes statute of limitations or CPLR pleading requirements, such as the relation-back doctrine. Indeed, in *Williams*, this Court, while explaining and applying the liberal construction principle to give effect to the Restoration Act, rejected a discrimination plaintiff's efforts to assert a claim of sexual harassment that was not brought within the limitations period (*see Williams*, 61 AD3d at 80-81).

Additionally, by seeking to bring plaintiff's claim of sexual orientation discrimination within her original claim for sex and gender discrimination under the State and City HRLs, the majority effectively reads the words "sexual orientation" out of both of those statutes. Unlike title IX of the Educational Amendments Act of 1972 and title VII of the Civil Rights Act of 1964, the State and City HRLs expressly protect individuals from discrimination on the basis of sexual orientation as well

---

Civil Rights Acts of 1964 [42 USC § 2000e-2 (a) (1)]); *Hively v Ivy Tech Community Coll. of Indiana*, 853 F3d 339 (7th Cir 2017 en banc) (same).

as on the basis of their sex or gender (McKinney's Cons Laws of NY, Book 1, Statutes § 231 ["In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning"]; *Criscione v City of New York*, 97 NY2d 152, 157 [2001]; *People v Destin*, 150 AD3d 76, 81-82 [1st Dept 2017, Acosta, J.]; *see People v Dethloff*, 283 NY 309, 315 [1940] [reviewing court must proceed "upon the assumption that the Legislature did not deliberately place in the statute a phrase which was intended to serve no purpose"]).

In this case, while the original complaint included claims of gender discrimination under both the State and City HRLs, as well as claims of disability discrimination and retaliation, it alleged no claim of discrimination under the separate and distinct category of sexual orientation discrimination found in both statutes.

The same is true of plaintiff's initial federal and state agency filings. The NYCTA OEEO complaint form, filed by plaintiff in August 2012, consistent with the State and City HRLs, sets forth each of those two forms of discrimination as separate categories. At that time, plaintiff checked only the box reflecting discrimination on the basis of "Sex/Gender," not the one relating to "Sexual Orientation." Based upon the record, it appears that plaintiff's first mention of sexual orientation discrimination is in the proposed amended complaint. The allegations in her prior complaints, filed from August 2012 onward and including the original complaint in this action, were devoid of any factual or legal basis supporting a claim of sexual orientation discrimination. Thus, defendants did not receive actual or legally cognizable notice of any of the alleged transactions or occurrences upon which plaintiff's sexual orientation claims are based. Accordingly, the CPLR 203 (f) relation-back exception does not save plaintiff's concededly untimely new claims.

In relying on *Duffy v Horton Mem. Hosp.* (66 NY2d 473 [1985]), *Caffaro v Trayna* (35 NY2d 245 [1974]) and *Giambrone v Kings Harbor Multicare Ctr.* (104 AD3d 546 [1st Dept 2013]), the majority misses the mark. In *Duffy*, the Court of Appeals held that the plaintiff was not barred by the expiration of the statute of limitations from amending the complaint to sue a third-party defendant directly on the same claim as was advanced in the third-party complaint (*Duffy*, 66 NY2d at 478). The *Duffy* Court reasoned that because the direct claim was

based on the same transactions or occurrences as were alleged in the third-party complaint, the third-party defendant had actual notice of those transactions or occurrences (*id.*). In *Caffaro*, the Court of Appeals held that a complaint in a medical malpractice action could be amended by an executor who had been substituted for the decedent as plaintiff, even after the limitations period had expired, to include a wrongful death cause of action where the alleged cause of death was attributed to the same personal injuries as alleged in the original complaint (*Caffaro*, 35 NY2d at 250). In *Giambrone*, this Court held that the original complaint for medical malpractice could be amended to add the derivative claim of the plaintiff's spouse, because the new claim was based upon exactly the same factual allegations and theory of liability as were set forth in the original complaint. Thus, *Duffy*, *Caffaro*, and *Giambrone* all concern the amendment of complaints to add claims based upon the same transactions or occurrences upon which claims advanced in the original complaints were based under circumstances involving the addition or substitution of parties to an action.

Here, by contrast, plaintiff's sexual orientation discrimination claims are not based on the same transactions or occurrences as alleged in the original complaint, but upon the new factual allegations, asserted for the first time in the proposed amended complaint, that she is a lesbian, that Menduina was aware of her sexual orientation, and that her former supervisor was demoted after having written a letter of support for her discrimination claims. In addition to these allegations being post hoc (*see Matter of Clairol Dev., LLC v Village of Spencerport*, 100 AD3d at 1547 ["The relation back doctrine . . . is inapplicable where the causes of action are based upon events that occurred after the filing of the initial petition, rather than upon the transactions giving rise to the (causes of action) in the initial petition" (internal quotation marks omitted)]), they cannot serve as a basis for plaintiff's new claims of sexual orientation discrimination, because they are not allegations of transactions or occurrences of which defendants were provided notice by way of the original complaint. Under these circumstances, the CPLR 203 (f) relation-back exception is inapplicable and does not save plaintiff's facially untimely sexual orientation discrimination claims.

Moreover, the proposed amended complaint falls short for the additional reason that it fails to state a claim for sexual

orientation discrimination. To do so, a plaintiff must allege that she was a member of a protected class, that she was qualified for the positions that she sought and held, that she was subjected to adverse employment action, and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination (*see Brennan v Metropolitan Opera Assn.*, 284 AD2d 66, 70 [1st Dept 2001]).

Here, as noted, the original complaint is devoid of any factual allegations suggesting discrimination on the basis of sexual orientation. In the amended complaint, the new factual allegations include plaintiff's self-identification as a lesbian and the allegation that Menduina was aware of her sexual orientation at the time defendants took job actions adverse to her. Plaintiff also alleges that her former supervisor, an out lesbian, was demoted in retaliation for writing a letter of support for her. Even viewed in the light most favorable to plaintiff, these allegations, without more, are insufficient to establish that defendants' alleged discriminatory acts were motivated by animus against plaintiff's sexual orientation. Moreover, plaintiff makes no mention of defendants having subjected her to any adverse employment actions that were not taken against similarly situated heterosexual colleagues. Plaintiff has not only failed to allege that any adverse employment actions taken against her occurred under circumstances giving rise to an inference of sexual orientation discrimination (*see Matz v Prospect Energy Corp.*, 63 AD3d 619, 619 [1st Dept 2009], citing *Brennan*, 284 AD3d at 70), but she has also failed to allege any factual basis whatsoever from which discrimination against her on the basis of her sexual orientation could be inferred.

Moreover, plaintiff's claim about her former supervisor pertains solely to an adverse employment action taken by defendants against a third party, not plaintiff (and which occurred subsequent to the claimed adverse employment actions against plaintiff). As plaintiff asserts no claim of discrimination by association (*see Loving v Virginia*, 388 US 1 [1967]), these representations are therefore irrelevant to consideration of whether plaintiff herself was subjected to sexual orientation discrimination.

Far from eschewing the broad construction to be used in interpreting our City HRL, as the majority claims, I would merely require plaintiff to adhere to the notice pleading requirements of the CPLR, which the majority concedes govern claims under these statutes. In failing to give defendants no-

tice in her original complaint of discriminatory action taken against her on the basis of her sexual orientation, plaintiff failed to meet the notice requirements of CPLR 203 (f) and the common law. Further, although the additional facts she seeks to add in her proposed amended complaint might state a discrimination claim that could be pursued by her supervisor (*see Albunio v City of New York*, 16 NY3d 472 [2011]), they offer no basis to infer sexual orientation discrimination against her.

For these reasons, I believe that had plaintiff's sexual orientation discrimination claims been advanced in her original complaint, they would not have survived a motion to dismiss (*see* CPLR 3211 [a] [7]; *Matz v Prospect Energy Corp.*, 63 AD3d at 619, citing *Brennan*, 284 AD2d at 70). Accordingly, in my view, these claims should not be advanced by way of an amended complaint (*see Gonik v Israel Discount Bank of N.Y.*, 80 AD3d 437, 439 [1st Dept 2011] [unanimously affirming denial of leave to amend complaint where plaintiff "fail(ed) to demonstrate that any of (the proposed new causes of action) state prima facie a viable cause of action"]).

Because I believe that leave to amend the complaint to add plaintiff's sexual orientation discrimination claims was improvidently granted, I would not reach defendants' contention that deprivation of their opportunity to depose plaintiff on her new claims constituted an abuse of discretion.

Accordingly, I would reverse the order of Supreme Court granting plaintiff's motion for leave to amend the complaint to add claims for sexual orientation discrimination and deny the motion.

RICHTER and MANZANET-DANIELS, JJ., concur with ACOSTA, P.J.; KAHN and TOM, JJ., dissent in an opinion by KAHN, J.

Order, Supreme Court, New York County, entered August 17, 2016, modified, on the law and the facts and in the exercise of discretion, to allow further disclosure as necessary (including the deposition of plaintiff as indicated herein), and otherwise affirmed, with costs.