dMY Sponsor, LLC v Glatt (2024 NY Slip Op 50364(U))

[*1]

dMY Sponsor, LLC v Glatt

2024 NY Slip Op 50364(U)

Decided on April 5, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 5, 2024
Supreme Court, New York County

dMY Sponsor, LLC, DMY TECHNOLOGY GROUP, INC., and GTY TECHNOLOGY HOLDINGS, INC., Plaintiffs,

against
Carter Glatt and CAPTAINS NECK HOLDINGS, LLC, Defendants.
CARTER GLATT, CAPTAINS NECK HOLDINGS LLC, and DUNE ACQUISITION HOLDINGS LLC, Counterclaimants, 
against
DMY SPONSOR, LLC, DMY TECHNOLOGY GROUP, INC., GTY TECHNOLOGY HOLDINGS, INC., DMY SPONSOR II, LLC, DMY TECHNOLOGY GROUP, INC. II, DMY SPONSOR III, LLC, DMY TECHNOLOGY GROUP, INC. III, HARRY L. YOU, and NICCOLO DE MASI, Counterclaim Defendants.

Index No. 653903/2020

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 214, 215, 216, 217, 218, 219, 220, 221 were read on this motion to AMEND CAPTION/PLEADINGS.
In this action arising from business dealings to create and invest in certain special purpose acquisition companies (SPACs), counterclaimants Carter Glatt, Captains Neck Holdings LLC, and Dune Acquisition Holdings LLC allege, inter alia, the breach of an oral partnership agreement and fraudulent misrepresentation. In motion sequence number 008, counterclaimants move, pursuant to CPLR 3025 (b), for leave to amend their answer and counterclaims to add additional allegations and counterclaims. Counterclaim defendants oppose the motion in part. For the reasons stated herein, the motion is granted in part.
I. BACKGROUND
This action arises out of business dealings between counterclaimant Carter Glatt and counterclaim defendant Harry L. You relating to their work to develop and/or invest in several SPACs. In particular, counterclaimants allege a purported agreement between Glatt and You to "partner" to develop and invest in a series of SPACs; You's subsequent creation of multiple SPACs with counterclaim defendant Niccolo de Masi independently of Glatt; Glatt's purchase of stocks in dMY Sponsor LLC; and counterclaim defendants' interference with the business of Glatt's own SPAC, Dune Acquisition Corp. (Dune SPAC), and his SPAC sponsor company, Dune Acquisition Holdings LLC (Dune).
Plaintiffs commenced this action by filing a complaint on August 18, 2020 and amended the complaint on September 14, 2020. Counterclaimants filed their answer with counterclaims on October 5, 2020 and amended their answer on December 8, 2020 (NYSCEF doc no. 89) to assert a total of eight counterclaims.
In February 2021, counterclaimants stipulated to dismiss their claims against GTY Technology Holdings, Inc., including Count 2, which was solely against GTY Technology Holdings, Inc. (see NYSCEF doc. no. 137 [stipulation]).
On February 12, 2021, counterclaim defendants moved to dismiss Counts 3 through 8 of the counterclaims (motion seq. no. 005). By decision and order dated June 6, 2023 (NYSCEF doc. no. 210), this court granted the motion to the extent of dismissing Counts 4 through 8 but denied the motion as to Count 3 for fraudulent misrepresentation. As relevant here, the counterclaims dismissed included breach of contract (Count 5), unjust enrichment (Count 8), and tortious interference (Count 6). Thus, the only counterclaims currently in effect are for breach of contract (Count 1) and fraudulent misrepresentation (Count 3).
In the instant motion (motion seq. no. 008), counterclaimants seek leave to file a second [*2]amended answer. In the proposed amended answer, the previous breach of contract claim remains Count 1, and the fraudulent misrepresentation claim becomes Count 2. Additionally, counterclaimants seek to restore three of the counterclaims previously dismissed, including the breach of contract counterclaim as against You (previously Count 5, now 3), the unjust enrichment counterclaim (previously Count 8, now 4) and the tortious interference counterclaim (previously Count 6, now 5); and to add a new counterclaim for conversion (Count 6).
Counterclaim defendants oppose the motion with respect to Counts 3 through 6 of the proposed second amended answer.
II. LEGAL STANDARD
Pursuant to CPLR 3025, a party may amend a pleading "at any time by leave of court" (CPLR 3025 [b]). "While it is true that on a motion for leave to amend [a pleading] the movants need not establish the merit of [their] proposed new allegations, they must show that the proffered amendment is not palpably insufficient or clearly devoid of merit" (Sahmanovic v Kingsbridge Realty Assoc., LLC, 197 AD3d 1077, 1077 [1st Dept 2021]). Claims that contain only bare legal conclusions without supporting facts are subject to dismissal (see Comm'rs of the State Ins. Fund v Ramos, 63 AD3d 453 [1st Dept 2009]). Otherwise, leave to amend "should be freely granted, absent prejudice or surprise resulting therefrom" (MBIA Ins. Corp. v. Greystone & Co., Inc., 74 AD3d 499, 499 [1st Dept 2010]).
To defeat an amendment, the opponents must demonstrate "some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided had the original pleading contained what the amended one wants to add" (Pegno Constr. Corp. v City of New York, 95 AD2d 655, 656 [1983], quoting Siegel, New York Practice § 237 at 289). The opponents must show "that [they have] been hindered in the preparation of [their] case or [have] been prevented from taking some measure in support of [their] position" (Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23 [1981]). "Prejudice does not occur simply because a [party] is exposed to greater liability or . . . has to expend additional time preparing its case" (Jacobson v McNeil Consumer & Specialty Pharms., 68 AD3d 652, 654 [1st Dept 2009]).
III. DISCUSSION
Counterclaimants represent that the proposed amendments are intended to address the deficiencies the court highlighted in its decision of June 6, 2023 regarding the previously asserted counterclaims for breach of contract, unjust enrichment and tortious interference.
A. Breach of Contract (Count 3)
The proposed Count 3 of the counterclaims alleges that You secretly developed and launched SPACs dMY I, dMY II, dMY III, dMY IV, dMY VI, and dMY Squared with de Masi. This act, while offering Glatt only a small investment opportunity in dMY I and no investment opportunity at all in the other dMY SPACs, was allegedly in breach of an oral partnership agreement between You and Glatt. Counterclaimants allege that this was in breach of a term of the oral agreement, that Glatt and You "would each have the opportunity to invest in each SPAC on equal terms" (proposed amended answer, ¶ 29).
This allegation differs from the previous fifth counterclaim in that this new claim is based on a mutual agreement to invest in a series of SPACs, rather than an agreement allegedly to compensate Glatt for negotiation services. Accordingly, the Statute of Frauds of General [*3]Obligations Law § 701 (a) (10) no longer applies to bar this claim.
Further, although counterclaim defendants also argue that this claim is barred by General Obligations Law § 5-701 (a) (1) because the terms of the alleged oral agreement are incapable of being performed within a year, this argument ignores the exception that permits oral agreements to be enforced, so long as there is any possibility the agreement "may" be performed within a year. In such a case, "the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame" (JNG Const., Ltd. v Roussopoulos, 135 AD3d 709, 710 [2d Dept 2016]). Here, the allegations, as asserted, allow for the possibility that the SPAC platform is developed and launched within one year, and that Glatt becomes an equal partner within that same period of time. Indeed, counterclaimants allege that dMY I, II, and III were all in fact launched in the same year of the alleged oral partnership agreement.
Therefore, the relevant question becomes whether counterclaimants adequately plead a breach of contract claim. "A cause of action alleging breach of a partnership agreement 'must allege the existence of a contract, the plaintiff's performance under the contract, the defendant's failure to perform under the contract, and resulting damages'" (Sunyoung Jung v Reiner & Kaiser Assoc., 220 AD3d 643, 645 [2d Dept 2023]).
Here, counterclaimants allege that "Mr. You [] proposed that he and Mr. Glatt partner on a series of SPACs" (proposed amended answer, ¶ 28) but admit the proposal was "not memorialized in a formal signed writing" (id. at ¶ 29). The complaint states Glatt accepted the offer by performing work "based on Mr. You's agreement to partner with him on further SPACs" (id. at ¶ 33). It is also alleged that You and Glatt "understood and agreed on the key terms of the partnership," which included that "they would each have the opportunity to invest in each SPAC on equal terms—i.e., purchase up to a 50% share of the interest in each SPAC" they created together (id.). Nevertheless, it is asserted that You failed to offer Glatt an opportunity to invest in dMY "on equal terms as Mr. You" including "full sharing of profits and losses based on the extent of the investment" (id. at ¶ 53).
The court finds that counterclaimants sufficiently allege a breach of contract claim. Although counterclaim defendants argue that counterclaimants fail to allege the requisite elements for the formation of a partnership, the court notes that, at the dismissal stage, the court need not reach the ultimate question of whether a partnership was necessarily created. It is sufficient that counterclaimants plead facts to support the existence of an oral agreement, performance in accordance with that agreement, breach, and resultant damages (Basal Trading & Sons Ltd. v M&G Diamonds, Inc., 212 AD3d 551 [1st Dept 2023] ["Essential elements of breach of contract claim include terms of alleged agreement, consideration, performance by plaintiff, alleged breach by defendants, and resulting damages"]).
B. Unjust Enrichment (Count 4)
In the proposed fourth cause of action, counterclaimants assert that You and de Masi have been unjustly enriched by the services and resources Glatt provided in performing preparatory work for launching SPAC platforms, inasmuch as they used the services to launch their own SPACs without involving or adequately compensating Glatt.
In the previous decision, the court recognized that counterclaimants' unjust enrichment claim (Count eight) was, similar to the breach of contract claim, barred by the Statute of Frauds because it was based on an agreement for the provision of negotiating services (see General [*4]Obligations Law § 701 [a] [10]).
Here, counterclaimants have amended their allegations to describe in detail the services Glatt provided in developing the SPAC platform which You and de Masi used to create their own SPACs. In the proposed amended answer, counterclaimants allege that Glatt "developed contacts and relationships with lawyers and underwriters who would perform legal and financial work necessary to launch SPACs under the platform, and . . . researched and designed potential terms and structures for the platform's SPACs, including working on innovations and structural improvements to the standard SPAC model for potential use in the SPACs." It is further alleged that Glatt worked on identifying and evaluating potential business opportunities for the SPACs he and You planned to launch and identified potential target companies and industries for the eventual de-SPAC transactions (proposed amended answer ¶ 36). These facts, as pleaded, assert that Glatt provided services that went beyond being "part of or in furtherance of negotiation" (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 766 [2015]).
Thus, the court does not find that the unjust enrichment claim is barred by the Statute of Frauds (General Obligations Law § 5-701 [a] [10]). Neither does the court find that the counterclaimants pursue this quasi-contractual claim for the "sole purpose of circumventing the statute of frauds" (Future Star Hospitality Advisors, LLC v LaFrieda Veal & Lamb Co., Inc., 203 AD3d 509, 509 [1st Dept 2022]). "[W]here there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies" (CIP GP 2018, LLC v Koplewicz, 194 AD3d 639, 640 [1st Dept 2021], citing Sabre Intl. Sec., Ltd. v Vulcan Capital Mgt., Inc., 95 AD3d 434, 438-439 [1st Dept 2012]).
The court also declines to find the unjust enrichment claim to be duplicative of the breach of contract claim, where, as here, there is a bona fide dispute as to the existence of an oral agreement and partnership regarding the interest, investment, and purchase of shares in each SPAC.
TortiouC. nterference with Business Relations (Count 5)
Counterclaimants next assert that You and de Masi interfered with the business relations of Glatt and Dune by bringing this action, by contacting a research and analysis firm to draw public attention to the allegations herein, by contacting entities working with Glatt and Dune, and by making statements concerning Glatt's professional qualifications and conduct. Counterclaimants allege that this conduct has caused investors to withdraw investments they would have made but for the interference and delayed the launch of the Dune SPAC.
"To prevail on a claim for tortious interference with business relations, a party must prove: (1) that it had a business relationship with a third party; (2) that the [opposing party] knew of that relationship and intentionally interfered with it; (3) that the [opposing party] acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the [opposing party's] interference caused injury to the relationship with the third party" (Stuart'S v Edelman, 196 AD3d 711, 713 [2d Dept 2021]). "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations" (Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]).
In the above-referenced earlier decision, the court recognized that the previously asserted tortious interference claim (Count 6) was deficient in that the statements made within litigation, [*5]alleged to constitute interference, were absolutely privileged.
Here, to the extent that counterclaimants continue to base their claim on statements made during litigation, the statements remain insufficient to sustain the claim. The rule remains that "a statement made in the course of legal proceedings is absolutely privileged if it is at all pertinent to the litigation" (Lacher v Engel, 33 AD3d 10, 13 [1st Dept 2006]). The statements in question were not so "outrageously out of context" as to overcome the "extremely liberal" standard with respect to the absolute privilege afforded to statements made in judicial proceedings (see Flomenhaft v Finkelstein, 127 AD3d 634, 637 [1st Dept 2015].
Furthermore, although counterclaimants also assert that counterclaim defendants made derogatory remarks directly to third parties, including potential investors for Dune SPAC and a reporter for the trade publication SPACInsider, counterclaimants have not adequately alleged that these communications were tortious. There are no factual allegations to support any inference that these statements were made "solely out of malice" or were otherwise "improper or illegal" (Stuart'S, 196 AD3d 711; Carvel Corp., 3 NY3d 182). Although counterclaimants insist that these communications were intended to interfere with the business of Glatt and Dune, such assertions are merely conclusory, and "suspicion, surmise and accusation are not enough to infer malice" (Sborgi v Green, 281 AD2d 230, 230 [1st Dept 2001]).
D. Conversion
Counterclaimants also seek to add a new claim for conversion as against You and de Masi, asserting that You and de Masi caused 251,250 Class Y units of dMY Sponsor owned by Glatt, through Captains Neck, to be sold, transferred or otherwise disposed of.
"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (Colavito v NY Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]). To state a conversion claim, a claimant must allege (1) a "possessory right or interest in the property" and (2) "defendant's dominion over the property or interference with it, in derogation of plaintiff's rights" (id. at 50). Under New York law, conversion claims may be brought as to both tangible and intangible property, including stocks that exist exclusively in electronic format (see Thyroff v Nationwide Mut. Ins. Co., 8 NY3d 283 [2007]). Courts recognize that "shares of stock can be transferred by mere computer entries" and that conversion occurs when a person improperly transfers shares from one financial account to another (see id.).
Counterclaim defendants argue that, whether physical or electronic, claimants must allege that the stocks were issued to Glatt or that he had some other kind of possession. Indeed, in the proposed amended answer, counterclaimants allege just that. Conversion lies where the tortfeasor exercises unauthorized dominion over property belonging to another, even if the possession was at one time lawful (see Kilmer v Hutton, 131 AD 625, 636 [1st Dept 1909] ["If a person in the rightful possession of chattels under permission of the owner with the right to make a particular use of them makes an unauthorized use of them, this terminates his right to their use and amounts to a conversion."]). While counterclaimants do not allege that the stocks were issued to them, or that there was any electronic record or registration, in this court's view, such allegations are not required to sustain the claim. It is sufficient for claimant to allege that they "owned" or "purchased" the stocks (proposed amended answer ¶¶ 79, 147) and that counterclaim defendants sold, transferred, or otherwise disposed of them improperly.
Further, although counterclaim defendants also argue that the claim is barred by the [*6]statute of limitations, as the three-year limitations period for conversion claims (see CPLR 214 [3]) applies in this case, it is unclear from the proposed additional allegations whether three years have expired since the alleged conversion occurred. Counterclaimants allege in the proposed amended answer that the alleged conversion occurred at some unspecified point in time "after the prior counterclaims were filed (in December 2020)," but it is unclear exactly when the alleged conversion occurred. Thus, the proffered amendment is not "clearly devoid of merit" (see Sahmanovic, 197 AD3d 1077).
Finally, the court notes that, although counterclaim defendants argue that they would be prejudiced by the proposed amendments, they fail to show"some special right lost in the interim, some change of position or some significant trouble or expense" (Pegno Constr. Corp. v City of New York, 95 AD2d at 656), that they have been hindered in the preparation of their case, or that they have been prevented from taking some measure in support of their position (see Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23 [1981]). That counterclaim defendants may be exposed to greater liability or have to spend additional time preparing their case does not create prejudice (Jacobson, 68 AD3d at 654). Counterclaim defendants admit that discovery is open and fail to show how additional discovery would not permit them to uncover any evidence necessary to oppose the newly added claims.
Accordingly, it is
ORDERED that counterclaimants' motion for leave to amend their answer is denied to the extent that they seek to add a fifth cause of action for tortious interference, and the motion is otherwise granted; and it is further
ORDERED that, within 20 days from entry of this order, counterclaimants shall serve a copy of this order with notice of entry and the second amended answer in conformity herewith; and it is further
ORDERED that counterclaim defendants shall reply to the second amended answer or otherwise respond thereto within 20 days from the date of said service; and it is further
ORDERED that counsel are directed to appear for a status conference via Microsoft TEAMS on June 6, 2024, at 10:30 AM.
DATE April 5, 2024
ROBERT R. REED, J.S.C.