People v Moore (2020 NY Slip Op 01645)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

People v Moore

2020 NY Slip Op 01645

Decided on March 11, 2020

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 11, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department
MARK C. DILLON, J.P.
RUTH C. BALKIN
HECTOR D. LASALLE
BETSY BARROS, JJ.


2017-06527
(Ind. No. 1993/15)

[*1]The People of the State of New York, respondent,
vShawn Moore, appellant.

Paul Skip Laisure, New York, NY (Tammy Linn of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Caroline R. Donhauser of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Michael Gary, J.), rendered May 24, 2017, convicting him of robbery in the first degree and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
The defendant was charged in a single indictment with charges arising from two separate robberies. On January 23, 2015, the defendant allegedly robbed Marilyn Lopez while she was inside a pizza delivery vehicle (hereinafter the Lopez robbery). On February 1, 2015, the defendant allegedly robbed Marissa Pratt while she was walking on a public street (hereinafter the Pratt robbery).
Prior to the trial, the defendant moved to sever the counts in the indictment pertaining to the Lopez robbery from the counts in the indictment pertaining to the Pratt robbery on the ground that he had important testimony to give in the Lopez case concerning a duress defense which was set forth in a written statement given to police, and that he had a genuine need to refrain from testifying in the Pratt case (see CPL 200.20[3]). The Supreme Court found that the defendant established that he had testimony to give concerning the Lopez case and a genuine need to refrain from testifying in the Pratt case. Nevertheless, the court ruled that, since the People were going to introduce the defendant's written statement, which set forth the defendant's duress defense, the defendant was "relieve[d]" from having to testify as to the contents of the statement, and, therefore, there was no need to sever the Lopez and Pratt trials.
Also prior to trial, the Supreme Court considered the People's Sandoval (People v Sandoval, 34 NY2d 371) and Molineux (People v Molineux, 168 NY 264) applications. In its Molineux ruling, the court ruled that the People would be permitted to rebut the defendant's duress defense with information on the certificates of disposition of two youthful offender adjudications, which included dates, and the statutory elements of two robbery offenses committed by the defendant. In its Sandoval ruling, the court ruled that the People may introduce evidence of the [*2]underlying facts of those robbery offenses in the event that the defendant elected to testify.
The defendant ultimately refrained from testifying. The People submitted, among other things, the defendant's written statement in its case-in-chief. The jury convicted the defendant of one count of robbery in the first degree and two counts of criminal possession of a weapon in the second degree relating to the Lopez robbery, and acquitted the defendant of the charges relating to the Pratt robbery. The defendant appeals his convictions with respect to the Lopez robbery.
We agree with the defendant's contention that the Supreme Court abused its discretion in denying his motion to sever the counts in the indictment pertaining to the Lopez robbery from the counts in the indictment pertaining to the Pratt robbery. CPL 200.20(3)(b) permits a court, in the interest of justice and for good cause shown, to in its discretion, order the separate trials of offenses joined under a single indictment where, inter alia, the defendant makes a "convincing showing that [he] has both important testimony to give concerning one count and a genuine need to refrain from testifying on the other, which satisfies the court that the risk of prejudice is substantial" (see People v Lane, 56 NY2d 1, 8; People v Davis, 141 AD3d 542, 543; People v Moses, 169 AD2d 786, 786; People v Montanez, 149 AD2d 627, 628).
"In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he [or she] wishes to give on one count and his [or her] reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying" (People v Lane, 56 NY2d at 8-9 [internal quotation marks omitted]). In People v Lane (id. at 10), the Court of Appeals recognized that "the possibility of cross-examination regarding specific criminal convictions or prior sordid conduct and the attendant risk of serious impeachment may justify a desire to refrain from testifying on one count but not on another where testimony is essential regardless of the risk of impeachment."
Here, as recognized by the Supreme Court and conceded by the People, the defendant convincingly showed that he had important testimony to give in the Lopez trial relating to his duress defense. In his written statement to the police, the defendant explained that Kedar Graham threatened to shoot him unless he was repaid the sum of $250. Graham then took the defendant to a quiet block, handed the defendant a gun, and directed the defendant to rob a nearby pizza delivery person. According to the statement, the defendant then robbed Lopez, who was inside the pizza delivery vehicle, and gave Graham all of the proceeds from the robbery.
Contrary to the Supreme Court's determination, the People's introduction into evidence of the defendant's written statement did not eliminate the defendant's genuine need to testify. The People's offer to present its version of a defense theory does not satisfy the defendant's right to present his own live testimony to the jury (see People v Thompson, 111 AD3d 56, 65). A "cornerstone of the judicial process" is "the jury's ability to see and hear a witness testify . . . in order to assess his or her credibility and weigh his or her testimony" (People v Calderon, 146 AD3d 967, 972). The Supreme Court's ruling "incorrectly presume[d] that the defendant's testimony would have mirrored his statement to the police," and would not have contradicted or supplemented the contents of the written statement (id. at 972; see People v Thompson, 111 AD3d at 65).
We agree with the defendant's contention that his written statement was not, in itself, adequate to support the affirmative defense of duress and, therefore, the defendant had important testimony to give with respect to his duress defense. The affirmative defense of duress requires the defendant to establish coercion by the use or threatened imminent use of unlawful physical force (Penal Law § 40.00[1]). Since the defendant's written statement did not explain why the defendant did not abandon the Lopez robbery once he was given a gun, the written statement was insufficient to establish that there was a threat of imminent use of physical force (see People v Thompson, 34 AD3d 325, 326). Indeed, the People argued to the jury that the defendant's duress defense should be rejected since, once the defendant was given the gun, he could have left the scene without committing the robbery. Thus, the record convincingly established that the defendant had important [*3]testimony to give about his duress defense in order to, inter alia, rebut the People's argument that the defendant was not under duress (see Penal Law § 40.00; People v Thompson, 34 AD3d at 325-326; People v Brown, 68 AD2d 503, 513).
Moreover, contrary to the People's contention, the defendant convincingly showed that he had a genuine need to refrain from testifying in regards to the Pratt robbery. In the event that the defendant testified, the Supreme Court's Sandoval ruling permitted the People to introduce evidence of the underlying facts of two prior youthful offender adjudications involving robberies that were similar to the Pratt robbery (see People v Lane, 56 NY2d at 10). Thus, if the defendant elected to testify, he would expose himself to the "risk of serious impeachment" with the underlying facts of two robberies bearing similarities to the Pratt robbery (id.). However, if he refrained from testifying, he was prejudiced in his ability to present his duress defense to the Lopez robbery counts.
In sum, the defendant made a convincing showing that he had important testimony to give concerning the Lopez robbery and a genuine need to refrain from testifying on the Pratt robbery (see CPL 200.20[3][b]). Considering that testifying in the Lopez case would risk substantial prejudice to the defendant in the Pratt case, and that refraining from testifying in the Lopez case would risk substantial prejudice to the defendant in the Lopez case, we disagree with the Supreme Court's discretionary denial of the defendant's motion to sever pursuant CPL 200.20(3)(b).
Under the circumstances, the Supreme Court's denial of the defendant's motion to sever the Lopez counts from the Pratt counts deprived the defendant of a fair trial (see People v Shapiro, 50 NY2d 747, 757; People v Crimmins, 36 NY2d 230, 238; cf. People v Lane, 56 NY2d at 10). Accordingly, we reverse the judgment and order a new trial.
In light of our determination, we need not reach the defendant's remaining contention.
DILLON, J.P., BALKIN, LASALLE and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court